IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No._____

BREAKTHROUGH MANAGEMENT
GROUP, Inc., a Colorado corporation,

                          Plaintiff,

v.

CHUKCHANSI GOLD CASINO AND
RESORT, an entity organized under the laws
of The Picayune Rancheria Of The
Chukchansi Indians;
JEFF LIVINGSTON, an adult individual;
PICAYUNE RANCHERIA OF THE
CHUKCHANSI INDIANS, a federally-
recognized Indian tribe;
THE CHUKCHANSI ECONOMIC
DEVELOPMENT AUTHORITY, an entity
organized under the laws of The Picayune
Rancheria Of The Chukchansi Indians;
RYAN STANLEY, an adult individual;
VERNON D'MELLO, an adult individual;

                          Defendants.

---

**VERIFIED COMPLAINT AND JURY DEMAND**

---

Plaintiff Breakthrough Management Group, Inc., for its Verified Complaint alleges as

follows:

## SUMMARY

1.      Plaintiff Breakthrough Management Group, Inc. ("BMG") is one of the world's

leading providers of "Six Sigma," "Lean Six Sigma," and "Lean" training and consulting

services, all of which are continuous improvement methodologies. BMG provides classroom and internet-based online education worldwide to individuals and numerous Fortune® 100 and 500 companies. Defendant Chukchansi Gold Resort & Casino (the "Casino") paid for a single person user license to BMG's Six Sigma eChampion® online education class (which is approximately 12 hours of instruction) for a Director at the Casino.

2.      With the intent to avoid paying for additional users, the Casino and some of its Directors engaged in a scheme to illegally record BMG's eChampion® online education class using a specially tailored software program and used various means to remove BMG's proprietary notices on visual portions of the BMG class that expressly stated that "No portion may be copied, reproduced, or rewritten." After the Casino illegally copied BMG's online education class, a Casino Director later instructed one of his subordinates to transcribe the recorded audio portion of the class. The Casino created Six Sigma training programs to train all of its employees in the Six Sigma methodology, with the audio portion of the training programs consisting entirely of having a trainer read a script that is a word-for-word copy of the script BMG created and used in BMG's online education class and the visual portion consisting entirely of screenshots from BMG's online education class with BMG's trademark and proprietary notices removed and replaced with the Casino's trademark. The Casino also created written Six Sigma training materials that were distributed to Casino employees that consisted of screenshots from BMG's eChampion® class, with BMG's trademark and proprietary notices removed and replaced with the Casino's trademark. All of these actions were also prohibited by the license agreement that the Casino entered into with BMG.

3.      A then current employee of the Casino has advised BMG that the Casino intends to train all of its employees with the materials it illegally created from BMG's materials and has, to date, trained at least 2/3 of its over 1,300 employees with these materials. In short, the Casino has avoided paying BMG over One Million Dollars to train all of its employees by purchasing a single person user license to a BMG online class.  A then current employee of the Casino repeatedly complained to executives at the Casino about how improper it was to illegally use and copy BMG's online education classes.  After those complaints went unheeded, the Casino employee advised BMG of the Casino's illegal actions, prompting the instant action by BMG. The Casino fired the Casino employee immediately after it learned that the employee had informed BMG of the Casino's copyright and trademark infringement.

## THE PARTIES

4.      Plaintiff Breakthrough Management Group, Inc. ("BMG") is a corporation incorporated under the laws of the state of Colorado, having its principal place of business at 1921 Corporate Center Circle, Longmont, CO 80501 in Boulder County.

5.      Defendant Picayune Rancheria of the Chukchansi Indians ("Tribe") is a federally-recognized Indian Tribe organized under the Indian Reorganization Act of 1934, 25 U.S.C. § 476.  The Tribe's principal place of business is located in and around Madera County, California.

6.      Defendant The Chukchansi Economic Development Authority ("CEDA") is, upon information and belief, an entity organized under the laws of the Tribe to conduct and manage many of the Tribe's economic development activities.  CEDA's principal place of business is located in and around Madera County, California.

7.      Defendant Chukchansi Gold Casino and Resort ("Casino") is, upon information and belief, an entity organized under the laws of the Tribe.  The Casino's principal place of business is located in and around Madera County, California.  Upon information and belief, at all relevant times alleged in this Complaint, the Casino was located on lands that are not held in trust by the Federal Government as an Indian Reservation.

8.      Defendant Ryan Stanley ("Stanley") is an adult individual who resides in Madera County. California.  At all relevant times alleged in this Complaint, Defendant Stanley is and has been an employee of the Casino, acting in the course and scope of his employment with the Casino.  At all relevant times alleged in this Complaint, Defendant Stanley was, and currently is, a Director of the Casino.

9.      At all relevant times alleged in this Complaint, Defendant Stanley has been designated as a "Key Employee" of the Casino under California's Gambling Control Act, Cal. Bus. & Prof. Code §19800 (2006), *et seq.*, because he is employed in the operation of a gambling enterprise at the Casino in a supervisory capacity or empowered to make discretionary decisions that regulate gambling operations.  In February 2006, Defendant Stanley was employed in the operation of a gambling enterprise at the Casino in a supervisory capacity and/or empowered to make discretionary decisions that regulate gambling operations.

10.     Defendant Vernon D'Mello ("D'Mello") is an adult individual who resides in California.  At all relevant times alleged in this Complaint, Defendant D'Mello is and has been an employee of the Casino, acting in the course and scope of his employment with the Casino.

11.     Defendant Jeff Livingston ("Livingston") is an adult individual who resides in California. At all relevant times alleged in this Complaint, Defendant Stanley is and has been an

employee of the Casino, acting in the course and scope of his employment with the Casino.  At all relevant times alleged in this Complaint, Defendant Livingston was and currently is the Casino's "General Manager."

12.     At all relevant times alleged in this Complaint, Defendant Livingston has been designated as a "Key Employee" of the Casino under California's Gambling Control Act, Cal. Bus. & Prof. Code §19800 (2006), *et seq.*, because he is employed in the operation of a gambling enterprise at the Casino in a supervisory capacity or empowered to make discretionary decisions that regulate gambling operations.  Defendant Livingston is employed in the operation of a gambling enterprise at the Casino in a supervisory capacity and/or empowered to make discretionary decisions that regulate gambling operations.

13.     Upon information and belief, at all relevant times alleged in this Complaint, the Defendants were the agents or representatives of their codefendants and, in doing the things alleged in this Complaint, were acting within the course and scope of such agency or representation.

14.     Upon information and belief, Defendants formed, participated in, and aided and abetted a conspiracy to commit the unlawful acts alleged herein.  Therefore, the Defendants are jointly and severally liable for the wrongful acts of one another, as alleged herein.

### JURISDICTION AND VENUE

15.     The Court has jurisdiction of this action pursuant to the Copyright Act, 17 U.S.C. § 100 *et seq.*, 15 U.S.C. § 1121, 28 U.S.C. § 1331, 18 U.S.C. § 1964(a), 28 U.S.C. § 1338 (a) and (b), 28 U.S.C. § 1367.

16.     This Court also has original jurisdiction of this action pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. Pursuant to 29 U.S.C. § 1332(c)(1), Plaintiff is, for this jurisdictional purpose, a citizen of Colorado, while none of the Defendants are citizens of Colorado.

17.     The Defendants have consented to the jurisdiction of this Court.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b), (c) and (d) because the property that is the subject of the action is situated in this District, the injuries complained of herein occurred in this District, Defendants Tribe, Casino and CEDA are, upon information and belief, foreign entities, and/or a substantial part of the events that gave rise to BMG's claims took place in this District.

## **GENERAL ALLEGATIONS**

19.     BMG is in the business of providing "Six Sigma," "Lean Six Sigma," and "Lean" training and consulting services, as well as technology-based process improvement solutions to individuals, companies, and government entities worldwide.

20.     One of BMG's offerings is its "eLearning," which is an internet-based education system where people who are enrolled in a BMG training course are allowed to access the class by logging in to a secure internet site and providing a user-specific user name and password.

21.     On or about February 20, 2006, Defendant Casino purchased a single person user license for BMG's eLearning class entitled "eChampion$^{®}$" ("the eChampion$^{®}$ class"), which includes original creative images, text, sounds, and artwork.

22.     At the request of the Casino, the Casino was invoiced for the eChampion® class as follows: "Chukchansi Casino, 711 Lucky Lane, Coarsegold, CA 93614."  The Casino received the invoice for the eChampion® class and subsequently paid BMG for the license to the eChampion® class by way of a check on an account owned by the Casino.

23.     The license to the eChampion® class that the Casino purchased only authorized one person, Defendant Stanley, to access and view the materials of that class.

24.     BMG protects its intellectual property rights in the eChampion® class by requiring customers to agree to the terms of BMG's standard form of End User License Agreement ("EULA") before they can access and use the eChampion® class.  The EULA limits the use of the eChampion® class for the specific enrolled person's course work in the class.  Customers are specifically prohibited under the EULA from copying, distributing, and rewriting any portion of the images, audio files, and other materials provided as part of the eChampion® class.

25.     BMG also protects its intellectual property rights in the eChampion® class by having the following proprietary notice ("Proprietary Notice") at the bottom of the visual portion of the user screen at all times when the class is being accessed through BMG: "© 2002-2005 Breakthrough Management Group. All rights reserved. No portion may be copied, reproduced, or rewritten."

26.     On February 20, 2006 at 10:56 a.m. (MST), Defendant Casino accepted the terms of BMG's standard EULA for the eChampion® class.  Defendant's acceptance of the EULA was electronically recorded by BMG.  No user of the eChampion can access any portion of the eChampion® class through BMG's learning management system without first accepting the terms of the EULA.

27.     As part of the acceptance of the EULA and registration into the course, Defendant Stanley was listed as the authorized user and the email address of the authorized user was an email address owned by the Casino.

28.     Under the terms of the EULA, the Casino agreed that it is "only authorized to view, copy, and print documents contained within this website, subject to the agreement that: (1) Your [the Casino's] use is strictly for the performance of course-work for the course you have officially registered for; (2) You will display all copyright notices and retain copyright and other proprietary notices on all copies you make; (3) You will not reuse any material contained on this website including…; (4) You will not copy any codes or graphics contained in this site, except those graphics used in courses, subject to the above terms; … (6) You have not gained access to this website for the purposes of copying the contents of the courses, the course player or the course delivery system for your personal commercial or noncommercial use or your company's commercial or noncommercial use; (7) you understand that you are subject to the Copyright laws of the United States of America, and will not violate those laws."

29.     The EULA also contained a clause whereby the Casino expressly consented to the jurisdiction of the courts in Colorado.

30.     Upon information or belief, Defendant Stanley accepted the terms of the EULA on behalf of the Casino.  Defendant Stanley, as a "Director" of the Casino and a "Key Employee" under the California Gaming Act, had actual authority to bind the Casino to the terms of the EULA or, in the alternative, had apparent authority to bind the Casino to the terms of the EULA.

31.     Defendant Stanley reports to and is subordinate to Defendant Livingston.  Upon information and belief, Defendant D'Mello reports to and is subordinate to Defendant Stanley.

32.     Defendant Livingston is the head of the Casino's "Six Sigma Executive Leadership Council," and Defendant Stanley is a Director who is also on that council.  Upon information and belief, one of the roles of the Casino's "Six Sigma Executive Leadership Council" is to promote the use and training of the Six Sigma methodology in various departments and operations of the Casino.

33.     Upon information and belief, Defendant Livingston instructed Defendant Stanley to provide instruction in the Six Sigma methodology to Casino's employees.

34.     Upon information and belief, Defendants Casino, Livingston, Stanley and D'Mello initiated a scheme to copy BMG's eChampion® class for the purpose of using it to create works that could be used to train Casino's employees in the Six Sigma methodology.

35.     Upon information and belief, the Casino has at least one copy of the software program "Camtasia," which can be used to capture and record certain works that are broadcast over the Internet.

36.     Defendants used the software program Camtasia to capture and record the audio and visual portions of BMG's eChampion® class.  Defendants' recording of the BMG's eChampion® class breached the terms of the EULA.

37.     Using part of the audio and visual portions of the eChampion® class, Defendants created an audio/visual work ("the White Belt Audio/Visual Work") that plays as a PowerPoint presentation with graphic slides and an audio file that is playable with the work.

38.     Defendants created the audio portion of the White Belt Audio/Visual Work by having a Casino employee transcribe portions of the audio script that is read and presented in BMG's eChampion® class (the "eChampion Script").  This transcription of the script used in the

eChampion® class was done at the specific direction and/or with the knowledge of Defendants Stanley and D'Mello.  Defendant Stanley then read from the eChampion Script and had it recorded and made a part of a PowerPoint presentation.

39.     The audio portion of the White Belt Audio/Visual Work is a verbatim recitation of the eChampion Script, or substantially a word-for-word copy, with Defendant Stanley's voice used in the work instead of the voice used in BMG's eChampion® class.

40.     The visual portion of the White Belt Audio/Visual Work is comprised, in whole or in part, of screen shots of BMG's eChampion® class.

41.     Neither BMG's Proprietary Notice nor any BMG trademark are displayed on any portion of the White Belt Audio/Visual Work.

42.     Upon information and belief, Defendants removed, cropped the visual image and/or purposefully did not copy BMG's Proprietary Notice and BMG's trademark from the visual portion of the White Belt Audio/Visual Work.

43.     Defendant Casino's trademark "Chukchansi Gold Casino" appears in the visual portion of the White Belt Audio/Visual Work.

44.     Using part of the visual portion of the eChampion® class, Defendants created an 18-page written "White Belt Training" materials ("the Written WB Materials").  The Written WB Materials consist of 18 pages, with the Casino's name and logo appearing on the cover page and at least 6 other pages.  The Written WB Materials provide in pertinent part:

> "Welcome to the Chukchansi Gold Casino and Resort.  Congratulations! The White Belt Pin you received with this packet symbolizes your active participation in the first six levels of the Six Sigma Gaming Certification Program."

45.     Only 9 pages of the Written WB Materials have page numbers ("the Nine Numbered Pages"), with page 1 stating "Introduction" at the top of that page and page 9 stating "The end" at the bottom of that page.   The Nine Numbered Pages contains all, or substantially all, of the substantive instruction on Six Sigma concepts within the Written WB Materials.  Each of the Nine Numbered Pages contain depictions of what is displayed during portions of the BMG's eChampion® class, and appear to be screenshots of that BMG work.

46.     The copies of the visual screenshots from eChampion® class that appear in the Nine Numbered Pages of the Written WB Materials all originally had BMG's Proprietary Notice at the bottom of the screen when played on BMG's learning management system that read ""© 2002-2005 Breakthrough Management Group. All rights reserved. No portion may be copied, reproduced, or rewritten" when it was originally accessed through BMG.  Defendants replaced the BMG Proprietary Notice with their own text in the Written WB Materials.

47.     Using part of the audio and visual portions of the eChampion® class, Defendants created a work entitled "White Belt" class that is being used to train Casino employees ("the White Belt Class").

48.     The White Belt Class consists of having a person provide training to students in attendance by reading from or using a script while playing a PowerPoint Presentation with various visual slides being shown to students.

49.     The script that the trainer reads in the White Belt Class is comprised, in whole or in part, of apportion of the script that is read during the eChampion® class.

50.     Upon information and belief, during the White Belt Class the trainer usually reads a verbatim, or a substantially a verbatim, copy of a portion of the script that is read in the eChampion® class.

51.     Defendants created the script that is used in the White Belt Class by having a Casino employee transcribe portions of the audio track from BMG's eChampion® class.  A Casino employee transcribed a portion of the script used in the eChampion® class at the specific direction and/or knowledge of Defendants Stanley and D'Mello.

52.     The video portion of the White Belt Class is comprised, in whole or in part, of screen shots of BMG's eChampion® class.

53.     Neither BMG's Proprietary Notice nor any BMG trademark is displayed at any time during the White Belt Class. Upon information and belief, Defendants removed, cropped the visual image, and/or purposefully did not copy BMG's Proprietary Notice and trademark from the visual portion of the White Belt Class.

54.     Defendant Casino's trademark "Chukchansi Gold Casino" appears or is displayed during the White Belt Class.

55.     Upon information and belief, the Casino intends to train all of its employees using the White Belt Class.   Upon information and belief, the Casino currently has over 1,300 employees.

56.     Upon information and belief, Casino employees, including Defendant Stanley, have taught classes dealing with the Six Sigma methodology using portions of the audio tracks, visual displays, and/or the script from BMG's eChampion® class.

57.     Using part of the audio and visual portions of the eChampion® class, Defendants created a work entitled "Champion" class ("the Champion Class").  Defendants used all or part of the eChampion® class to create a work(s) that was used to train all, or substantially all, of the Casino's Directors in a work entitled "Champion."

58.     The Champion Class consists of having a person provide training to students in attendance by reading from or using a script while playing a PowerPoint presentation with various visual slides being shown to students.

59.     The script that the trainer reads in the Champion Class is comprised, in whole or in part, of a portion of the script that is read during the eChampion® class.

60.     Upon information and belief, during the Champion Class the trainer usually reads a verbatim, or a substantially verbatim, copy of a portion of the script that is read in the eChampion® class.

61.     Defendants created the script that is used in the Champion Class by having a Casino employee transcribe portions of the audio track from BMG's eChampion® class.  A Casino employee transcribed a portion of the script used in the eChampion® class at the specific direction and/or knowledge of Defendants Stanley and D'Mello.

62.     The video portion of the Champion Class is comprised, in whole or in part, of screen shots of BMG's eChampion® class.

63.     Neither BMG's Proprietary Notice nor any BMG trademark is displayed at any time during the Champion Class.

64.     Upon information and belief, Defendants removed, cropped the visual image, and/or purposefully did not copy BMG's Proprietary Notice and trademark from the visual portion of the Champion Class.

65.     Defendant Casino's trademark "Chukchansi Gold Casino" appears or is displayed during the Champion Class.

66.     Upon information and belief, all of Defendant Stanley's and D'Mello's actions that are alleged herein were performed at the instruction and/or with the authorization of Defendant Livingston and/or the Casino.

67.     All of Livingston's, D'Mello's and Stanley's acts that are alleged in this Complaint were performed in the course and scope of their employment with the Casino.

68.     Defendants Livingston and Casino knew, or should have known, that the Casino had never purchased anything greater than a single named user license to BMG's eChampion® class, and Defendants Livingston and Casino knew, or should have known, that the Casino used portions of BMG's eChampion® class to train a large number of its employees and/or to create works, including the Written WB Materials, the White Belt Class, the White Belt Audio/Visual Work, and/or the Champion Class.

69.     Upon information and belief, a Casino employee has made numerous complaints to other Casino employees, and at least one Director, about the impropriety of the copyright infringement alleged in this Complaint, but the Casino did not take any action to cease the infringement or the use of the works that infringe on BMG's copyrights.

70.     Defendants have created a number of works based on, or using portions of, BMG's eChampion® class, including, the Written WB Materials, the White Belt Class, and the

White Belt Audio/Visual Work, and the Champion Class.  Defendants have created these works based on BMG's eChampion® class without BMG's knowledge or consent.

71.    Each of the Defendants created the Written WB Materials, the White Belt Class, and the White Belt Audio/Visual Work, and the Champion Class, or aided and abetted the other Defendants in such acts.

72.    Defendants have used works created from the BMG's eChampion® class, including the Written WB Materials, the White Belt Class, and/or the White Belt Audio/Visual Work, to train Casino employees.  Defendants intend to train all or nearly all of the Casino's employees using works created from or based upon BMG's eChampion® class.

73.    BMG only authorized and consented to the training of one Casino employee with any portion of BMG's eChampion® class.

74.    Defendants have accomplished their scheme to illegally copy, use, distribute, and reproduce portions of BMG's eChampion® class and to create derivative works based on it through fraudulent and deceptive means by obtaining and maintaining a license to BMG's eChampion® class through false representations regarding its intended use and need for the work, and the failure to disclose and concealment of their scheme to use BMG's eChampion® class as the basis for developing works to train large portions of the Casino's staff and avoid having to pay BMG the fees associated with training this large number of people.

75.    BMG exclusively owns and controls the copyrights to the original creative sounds, images, text and artwork directly associated with BMG's eChampion® class.

76.    BMG exclusively owns and controls in the United States the service mark rights to the mark "eChampion," and attached as Exhibit A is a true and correct copy of the

representative registration for BMG's federal service mark No. 2,933,205 for eChampion˙ as printed from the official U.S.P.T.O. online service mark database.

77.     BMG exclusively owns and controls in the United States the trademark and service mark rights to the mark "Breakthrough Management Group – BMG [with logo]," and attached as Exhibit B is a true and correct copy of the representative registration for BMG's federal trademark and service mark No. 2,934,988 for "Breakthrough Management Group – BMG [with logo]"as printed from the official U.S.P.T.O. online service mark database.

78.     BMG exclusively owns and controls in the United States the common law state and federal trademark and service mark rights to the mark "Breakthrough Management Group," which it has used continuously throughout the United States in interstate commerce and worldwide in connection with the sales of goods and services.

79.     BMG has not abandoned any rights it holds in the trademark and service marks: "Breakthrough Management Group – BMG [with logo]," "Breakthrough Management Group," or "eChampion."

80.     Defendants have acted with malicious and evil intent, justifying the imposition of punitive damages.

### FIRST CLAIM FOR RELIEF
**All Defendants**
**(Federal Copyright Infringement)**
**(17 U.S.C. § 501)**

81.     BMG repeats, realleges and incorporates all of the allegations contained in the preceding paragraphs of this Complaint.

82.     As alleged herein, Defendants have manufactured and/or distributed, sold or offering for sale works that infringe on BMG's copyrighted and trademarked eChampion® class

in the form of written training materials, training curriculum, audio works, scripts, text, graphics, visual works, and audio/visual works ("Infringing Works"), including the Written WB Materials, the White Belt Class, Champion Class and/or the White Belt Audio/Visual Work.

83.     As alleged herein, Defendants have copied and used BMG's copyrighted eChampion® class, including visual and audio portions of the same, without BMG's consent by recording, producing, distributing, advertising, selling and/or offering for sale unauthorized works incorporating all or part of BMG's eChampion® class, including, without limitation, the Infringing Works.

84.     Defendants have caused the Infringing Works to enter into commerce, and/or to be transported or used in commerce.  Defendants are not authorized by BMG, or any agent of BMG, to record, produce, manufacture, distribute, advertise, sell, or offer for sale such works. Upon information and belief, Defendants are currently engaged in such use and, unless enjoined by this Court, will continue such use.

85.     Upon information and belief, Defendants have infringed, and will continue to infringe, BMG's copyrights relating to BMG's eChampion® class, as well as the related training materials, by (a) copying, transferring and making derivative works of, (b) producing, distributing, placing into the market products, services or portions of any of the forgoing which were derived or copied from, and/or (c) exceeding the scope of any EULA concerning said copyrighted works.

86.     At all relevant times, BMG has exclusively owned and controlled all right, title, and interest to the federal copyrights in connection with the eChampion® class.

87.     BMG has complied in all respects with Title 17 of the United States Code and secured exclusive rights and privileges to the federal copyrights in connection with the eChampion® class.  BMG is entitled to copyright protection under Section 104 of Title 17 of the United States Code.

88.     Upon information and belief, Defendants engaged, and continue to engage, in conduct which is done willfully, intentionally and with knowledge of the aforementioned copyrights owned by BMG.

89.     BMG has been damaged by, and Defendants have profited from, Defendants' wrongful conduct in an amount to be proven at trial.

90.     BMG has no adequate remedy at law.  Defendants' conduct has caused, and, if not enjoined, will continue to cause, irreparable harm to BMG's rights in its aforementioned copyrights.

91.     Upon information and belief, Defendants have infringed BMG's copyrights knowingly, deliberately, and willfully, and without the knowledge or consent of BMG.

### SECOND CLAIM FOR RELIEF
**Defendants Casino, CEDA, and Tribe**
**(Contributory Copyright Infringement)**

92.     BMG repeats, realleges and incorporates all of the allegations contained in the preceding paragraphs of this Complaint.

93.     Defendants Casino, CEDA, and Tribe have engaged, and continue to engage, in the business of knowingly inducing, causing and materially contributing to the above described copyright infringement.

94.     Defendant CEDA manages the operations of Defendant Casino.

95.     Defendant Tribe manages and/or controls Defendants CEDA and/or Casino.

96.     Defendant CEDA had the right and ability to supervise and control Defendants Casino, Stanley, Livingston, and D'Mello.

97.     Defendant Tribe had the right and ability to supervise and control the other Defendants.

98.     Defendants Casino, CEDA, and Tribe had actual or constructive knowledge of the infringing activity on BMG's copyrights, as alleged herein.

99.     At all relevant times, Defendants Casino, CEDA and Tribe exercised control, or had the ability to control, the goods and services that infringed on BMG's copyrights.

100.    The forgoing acts of copyright infringement and contribution to copyright infringement by Defendants Casino, CEDA, and Tribe have been willful, intentional, and in purposeful disregard and indifference to BMG's rights.

101.    Defendant Casino was the manufacturer and/or distributor of goods or services that infringed on BMG's copyrights.

102.    Defendants Casino, CEDA, and Tribe enabled the copyright infringement alleged in this Complaint.

103.    Defendants Casino, CEDA, and Tribe's conduct, as alleged herein, constitutes contributory infringement of BMG's copyrights and exclusive rights under copyright in violation of the Copyright Act, Sections 17 U.S.C. §§ 106, 115, and 501.

104.    As a direct and proximate result of Defendant Casino's contributory infringement, BMG is entitled to damages.

**THIRD CLAIM FOR RELIEF**
**Defendants Casino, CEDA, and Tribe**
**(Vicarious Copyright Infringement)**

105.    BMG repeats, realleges and incorporates all of the allegations contained in the preceding paragraphs of this Complaint.

106.    Defendants Livingston, D'Mello, and Stanley were at all relevant times acting within the course and scope of their employment with the Casino and, as such, the Casino is vicariously liable for the other Defendants actions.

107.    At all relevant times alleged herein, Defendants Casino, CEDA, and Tribe had the right and ability to supervise and control Defendants Livingston, D'Mello, and Stanley.  As a direct and proximate result of Defendants Casino, CEDA, and Tribe's failure to supervise and control the other Defendants, BMG was damaged.

108.    At all relevant times, Defendants Casino, CEDA and Tribe exercised control, or had the ability to control, the goods and services that infringed on BMG's copyrights.

109.    At all relevant times, Defendants Casino, CEDA, and Tribe derived a substantial financial benefit from the infringement of BMG's copyrights, including, but not limited to, obtaining training for a large portion of its work force without paying for it and realizing the financial benefits of utilizing the Six Sigma methodology in the Casino's operations.

110.    The foregoing acts of copyright infringement and contribution to copyright infringement by Defendants Casino, CEDA, and Tribe have been willful, intentional, and in purposeful disregard and indifference to BMG's rights.

111. The conduct of Defendants Casino, CEDA, and Tribe, as alleged herein, constitute vicarious infringement of BMG's copyrights and exclusive rights under copyright in violation of the Copyright Act, Sections 17 U.S.C. §§ 106, 115, and 501.

112. As a direct and proximate result of Defendants Casino, CEDA, and Tribe's vicarious infringement, BMG is entitled to damages.

**FOURTH CLAIM FOR RELIEF**
**All Defendants**
**(Federal Trademark Infringement)**
**(15 U.S.C. §1125(a))**

113. BMG repeats, realleges and incorporates all of the allegations contained in the preceding paragraphs of this Complaint.

114. BMG's trademarks and service marks (the "BMG Trademarks"), as alleged herein, including "Breakthrough Management Group – BMG [with logo]," "Breakthrough Management Group," and "eChampion," are distinctive, have been used throughout the United States and worldwide, and are well known to the trade and members of the purchasing public. The public generally associates and identifies BMG's Trademarks with BMG's goods and services.

115. Defendants' recording, manufacture, production, distribution, advertisement, sale, offer for sale, and/or other use of the works bearing Defendant Casino's trademarks or service marks on the Infringing Works constitute reverse passing off, and tends to misrepresent that said trademarks originate from Defendants, or that said goods or services have been sponsored, approved, or licensed by BMG, or are in some way affiliated or connected with BMG.

116. Defendants' reverse passing off took one or more forms, including but not limited to:

(a)   recording, manufacture, production, distribution, advertisement, sale, offer for sale, and/or other use of the works containing portions of or derived from BMG's eChampion® class, as well as related training materials, after only slightly modifying BMG's materials for time considerations and/or content and then relabeling the resulting training classes, course curricula, training materials, visual works, audio works, audio/visual works, and/or scripts as Defendant Casino's own; and

(b)   recording, manufacture, production, distribution, advertisement, sale, offer for sale, and/or other use of training classes, course curricula, training materials, visual works, audio works, audio/visual works, and/or scripts containing portions of, or derived from, BMG's eChampion® class, as well as related training materials as Defendant Casino's s own independently developed goods and/or services.

117.   Defendants' recording, manufacture, production, distribution, advertisement, sale, offer for sale, and/or other use of works bearing the BMG Trademarks constitute false designation of origin or sponsorship of said goods or services and tends to misrepresent that said trademarks originate from BMG, or that said goods or services have been sponsored, approved, or licensed by BMG, or are in some way affiliated or connected with BMG.

118.   Defendants' conduct, as alleged herein, is likely to confuse, mislead, and deceive members of the public as to the origin of said trademarks or cause said persons to believe that those goods or services offered by Defendants have been sponsored, approved, authorized or are in some way affiliated or connected with BMG.

119.    Defendants' actions were done willfully, with full knowledge of the falsity of such designations of origin and false descriptions and representations.

120.    BMG has been damaged by, and Defendants have profited from, Defendants' wrongful conduct in an amount to be proven at trial.

121.    BMG has no adequate remedy at law.  Defendants' conduct has caused and, if not enjoined, will continue to cause irreparable harm to BMG's rights in its aforementioned trademarks.

**FIFTH CLAIM FOR RELIEF**
**Defendant Casino, CEDA, and Tribe**
**(Contributory Trademark Infringement)**

122.    BMG repeats, realleges and incorporates all of the allegations contained in the preceding paragraphs of this Complaint.

123.    Defendants Casino, CEDA, and Tribe have engaged, and continue to engage, in the business of knowingly inducing, causing and materially contributing to the above described trademark infringement.

124.    Defendant CEDA had the right and ability to supervise and control Defendants Casino, Stanley, Livingston, and D'Mello.

125.    Defendant Tribe had the right and ability to supervise and control the other Defendants.

126.    Defendant Casino supplied the Infringing Works and provided Six Sigma training to its employees with actual or constructive knowledge that those goods and services infringed on BMG's trademarks.

127.   Defendants Casino, CEDA, and Tribe had actual or constructive knowledge of the infringing activity on BMG's trademarks, as alleged herein.

128.   Defendant Casino was the manufacturer and/or distributor of goods or services that infringed on BMG's Trademarks.

129.   Defendants Casino, CEDA, and Tribe enabled the trademark infringement alleged in this Complaint.

130.   The foregoing acts of trademark infringement and contribution to trademark infringement by Defendants Casino, CEDA, and Tribe have been willful, intentional, and in purposeful disregard and indifference to BMG's rights.

131.   As a direct and proximate result of Defendants Casino, CEDA, and Tribe's contributory infringement, BMG is entitled to damages.

### SIXTH CLAIM FOR RELIEF
**Defendants Casino, CEDA and Tribe**
**(Vicarious Trademark Infringement)**

132.   BMG repeats, realleges and incorporates all of the allegations contained in the preceding paragraphs of this Complaint.

133.   Defendants Livingston, D'Mello, and Stanley were at all relevant times acting within the course and scope of their employment with the Casino, and as such, the Casino is vicarious liable for the other Defendants actions.

134.   At all relevant times alleged herein, Defendant Casino had the right and ability to supervise and control Defendants Livingston, D'Mello, and Stanley.  As a direct and proximate result of Defendant Casino's failure to supervise and control the other Defendants, BMG was damaged.

135.     At all relevant times alleged herein, Defendant CEDA had the right and ability to supervise and control Defendants Casino, Livingston, D'Mello, and Stanley.  As a direct and proximate result of Defendant CEDA's failure to supervise and control the other Defendants, BMG was damaged.

136.     At all relevant times alleged herein, Defendant Tribe had the right and ability to supervise and control Defendants CEDA, Casino, Livingston, D'Mello, and Stanley.  As a direct and proximate result of Defendant Tribe's failure to supervise and control the other Defendants, BMG was damaged.

137.     At all relevant times, Defendants Casino, CEDA and Tribe derived a substantial financial benefit from the infringement of BMG's Trademarks.

138.     At all relevant times, Defendants Casino, CEDA and Tribe exercised control, or had the ability to control, the goods and services that infringed on BMG Trademarks.

139.     The foregoing acts of trademark infringement and contribution to trademark and service mark infringement by Defendants Casino, CEDA and Tribe have been willful, intentional, and in purposeful disregard and indifference to BMG's rights.

140.     As a direct and proximate result of Defendants Casino, CEDA and Tribe's vicarious infringement, BMG is entitled to damages.

## SEVENTH CLAIM FOR RELIEF
### All Defendants
### (Racketeer Influenced And Corrupt Organizations Act)
### (18 U.S.C. § 1961, et seq.)

141.     BMG repeats, realleges and incorporates all of the allegations contained in the preceding paragraphs of this Complaint.

142.    As alleged herein, Defendants' copyright infringement constitutes multiple acts of criminal copyright infringement that is indictable under 18 U.S.C. § 2319.

143.    As alleged herein, Defendants trademark and service mark infringement constitutes multiple acts of criminal trademark infringement that is indictable under 18 U.S.C. § 2320.

144.    Defendants used the United States mail and interstate telephone lines to: fraudulently obtain a license to BMG's eChampion class; fraudulently induce BMG to grant the Casino a license to BMG's eChampion® class under the mistaken belief that the Casino would not infringe on BMG's copyrights and trademarks to the work and violate the EULA; to register and pay for the license to the BMG's eChampion® class and purchase other goods and services from BMG; to access, use, distribute, copy, and/or reproduce BMG's eChampion® class and other copyrightable works, and to create, manufacture, and distribute the Infringing Works.  As result, Defendants' conduct is indictable as Mail Fraud under 18 U.S.C. § 1341 and Wire Fraud under 18 U.S.C. § 1343.

145.    Defendant Casino acquired control, maintained control, conducted, and participated in the conduct alleged in this Complaint through a pattern of racketeering activities in violation of 18 U.S.C. § 1962 (b) and (c).

146.    Defendant Stanley acquired control, maintained control, conducted, and participated in the conduct alleged in this Complaint through a pattern of racketeering activities in violation of 18 U.S.C. § 1962 (b) and (c).

147.    Defendant D'Mello acquired control, maintained control, conducted, and participated in the conduct alleged in this Complaint through a pattern of racketeering activities in violation of 18 U.S.C. § 1962 (b) and (c).

148.    Defendant Livingston acquired control, maintained control,conducted,and participated in the conduct alleged in this Complaint through a pattern of racketeering activities in violation of 18 U.S.C. § 1962 (b) and (c).

149.    Defendant Tribe acquired control, maintained control, conducted, and participated in the conduct alleged in this Complaint through a pattern of racketeering activities in violation of 18 U.S.C. § 1962 (b) and (c).

150.    Defendant CEDA acquired control, maintained control, conducted, and participated in the conduct alleged in this Complaint through a pattern of racketeering activities in violation of 18 U.S.C. § 1962 (b) and (c).

151.    Defendants conspired to violate 18 U.S.C. § 1962 (b) and (c), in violation of 18 U.S.C. § 1962(d).

152.    The Defendants' racketeering activity consists, upon information and belief, of at least five separate incidents on different days where the Defendants engaged in criminal copyright infringement, indictable under 18 U.S.C. § 2319 and criminal trademark infringement, indictable, under 18 U.S.C. § 2320, for among other things, manufacturing and/or distributing, selling or offering for sale, the Infringing Works and provided training using the Infringing Works.  The Defendants' racketeering activity also consists of, upon information and belief, at least three incidents where Defendants engaged in conduct indictable as Mail Fraud under 18 U.S.C. § 1341 and Wire Fraud under 18 U.S.C. § 1343, as previously alleged in this Complaint.

153.    Those acts have the same or similar intents, results, accomplices, victims, or methods of commission and are otherwise interrelated by distinguishing characteristics, and demonstrate continuity.  Those acts of racketeering activity constitute the predicate acts under 18 U.S.C. § 1961 (1) and a "pattern of racketeering activity" under 18 U.S.C. § 1961(4).

154.    As a direct and proximate result of Defendants' pattern of racketeering activity, BMG has suffered racketeering injury, including a loss of profits and damage to its business and property.

### EIGHTH CLAIM FOR RELIEF
**All Defendants**
**(Conversion)**
**(Colorado Common Law)**

155.    BMG repeats, realleges and incorporates all of the allegations contained in the preceding paragraphs of this Complaint.

156.    As alleged herein, Defendants have converted BMG's eChampion® class.  All of this property belongs solely and exclusively to BMG.

157.    As a direct and proximate result of the Defendant's conversion of BMG's property, as alleged herein, BMG has been damaged.

### NINTH CLAIM FOR RELIEF
**All Defendants**
**(Misappropriation)**
**(Colorado Common Law)**

158.    BMG repeats, realleges and incorporates all of the allegations contained in the preceding paragraphs of this Complaint.

159.    BMG, at its own expense and with its own labor and intellectual skill, has created assets in proprietary information, including but not limited to, eChampion® class, as well as related training materials.

160.    Defendants have appropriated BMG's assets without expenditure of their own time, labor or skill, and have used BMG's assets to develop a Six Sigma training program and training materials for Defendant Casino's employees and have, in fact, trained Defendants Livingston, Stanley, and D'Mello and Defendant Casino's employees with programs and materials misappropriated from BMG. In doing so, Defendants have been unjustly enriched by this wrongdoing.

161.    Defendants' misappropriation has caused commercial damage to BMG and has caused irreparable harm to BMG's good will and reputation.

### TENTH CLAIM FOR RELIEF
**Defendant Casino**
**(Breach of Contract)**

162.    BMG repeats, realleges and incorporates all of the allegations contained in the preceding paragraphs of this Complaint.

163.    Defendant Casino entered into the EULA in connection with the BMG's eChampion® class as alleged above.

164.    BMG has performed all the conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the EULA.

165.    Defendant Casino breached the EULA by:

(i)    improperly distributing, copying, using, rewriting and/or publishing the eChampion® class, as alleged above;

(ii)     failing to display all copyright and proprietary notices and retain the same on

any copies; and/or

(iii)    gaining access to the BMG's eChampion® class for the purpose of copying the

contents of the course.

166.    As a direct result of Defendants' breaches, BMG has suffered damages in an

amount to be proven at trial.

<u>ELEVENTH CLAIM FOR RELIEF</u>
**Defendant Casino**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

167.    BMG repeats, realleges and incorporates all of the allegations contained in the

preceding paragraphs of this Complaint.

168.    An implied covenant of good faith and fair dealing existed in the EULA between

BMG and Defendant Casino. That implied covenant of good faith and fair dealing required that

Defendant Casino give BMG the benefit of its contract and act with utmost good faith in its

relationship with BMG and not prevent BMG from realizing the benefits of its contract.

169.    Defendant Casino breached the implied covenant of good faith and fair dealing by

using BMG's eChampion® class for purposes of  developing a product and/or service with the

same features, functions, curriculum, text, visual graphics, and look and feel as the BMG's

eChampion® class, as alleged above.

170.    As a direct and proximate result of Defendant Casino's' wrongful conduct, BMG

has suffered damages.

**TWELFTH CLAIM FOR RELIEF**
**All Defendants**
**(Fraud)**
**(Colorado Common Law)**

171.    BMG repeats, realleges and incorporates all of the allegations contained in the preceding paragraphs of this Complaint.

172.    In 2006, Defendant Casino promised to comply with BMG's EULA in obtaining access to BMG's eChampion® class, including the license restrictions contained therein. Defendants Casino, Stanley, and D'Mello further represented that they wanted to have a single user license to BMG's eChampion® class for the purpose of training the single student registered in each respective class and not for the purpose of copying or rewriting, distributing or redistributing any portion of those materials.

173.    Those representations were false. Defendants obtained and used BMG's eChampion® class for purposes of developing a Six Sigma training program for the Casino's employees that would have the same or similar content, features, text, graphics, curriculum, functions and/or look and feel as the BMG training classes and materials in question. At the time of making these representations, Defendants knew them to be false and made them with the intention to deceive and defraud BMG and induce BMG, in reliance on the false representations, to provide Defendants with access to BMG's instruction and training materials, including instruction and materials relating to the eChampion® class. BMG, at the time these representations were made, was not aware of the falsity of the Defendants' representations and believe them to be true, and therefore licensed, provided access, and instruction, as well as copies of training materials, relating to eChampion® class. Had BMG known the true facts, it would not have taken such action.

174.    Further, at the time these promises were made, Defendants failed to reveal to BMG and suppressed the fact that Defendants obtained access to BMG's eChampion® class, as well as related training materials, for purposes of developing a Six Sigma training program for the Casino's employees that would have the same or similar content, features, text, graphics, curriculum, functions and/or look and feel as the BMG training classes and materials in question. Defendants further failed to disclose and suppressed the scope and nature of their use and distribution, as alleged herein, of BMG's eChampion® class, as well as related training materials. The failure to disclose and suppression of such facts were reasonably likely to mislead BMG and did, in fact, mislead BMG.

175.    The failure to disclose and the suppression of such facts were made with the intent to induce BMG to continue to license and/or grant access, as applicable, to BMG's eChampion® class, as well as all related training materials, to Defendants and to induce BMG not to terminate such license or take other actions to protect its intellectual property from such unauthorized use. BMG was unaware of the facts that were not disclosed and suppressed and, as a result, continued to license and/or grant access, as applicable, BMG's eChampion® class, as well as all related training materials, to Defendants that enabled Defendants to develop a Six Sigma training program for the Casino's employees that would have the same or similar content, features, text, graphics, curriculum, functions and/or look and feel as the BMG training classes and materials in question.

176.    As a proximate result of the fraudulent conduct of Defendants, BMG has suffered damages in an amount to be proven at trial.

177.    The aforementioned conduct of Defendants was an intentional misrepresentation, deceit and concealment of material facts known to the Defendants with the intention on the part of the Defendants of causing injury to BMG; was malicious, fraudulent and in conscious disregard of BMG's rights, so as to justify an award of punitive damages.

**THIRTEENTH CLAIM FOR RELIEF**
**All Defendants**
**(Unfair Competition)**
**(Colorado Common Law)**

178.    BMG repeats, realleges and incorporates all of the allegations contained in the preceding paragraphs of this Complaint.

179.    Defendants engaged in reverse passing off as previously alleged in this Complaint.

180.    Defendants thereby used false designations of origin, false and misleading descriptions of fact, and false and misleading representations of fact, in connection with Defendants' Six Sigma training programs, Six Sigma audio and/or visual works, and training materials.

181.    Defendants' reverse passing off is likely to cause confusion, and to cause mistake, and to deceive consumers as to the affiliation, connection, and association of Defendants with BMG, or as to the origin, sponsorship, or approval of Defendants' Six Sigma training programs, Six Sigma audio and/or visual works, and training materials by BMG.

182.    Defendants' reverse passing off misrepresents the nature, characteristics, qualities, and origin of the Defendants' Six Sigma training programs, Six Sigma audio and/or visual works, and training materials that Defendants distribute.

183.    Defendants committed these reverse passing activities with an intent to deceive consumers and members of the public.

184.    Defendants' conduct was a proximate cause of damage and commercial detriment to BMG.

185.    Defendants must not be allowed to profit by its wrongful methods, and BMG should receive adequate compensation for the loss or injury it has suffered.

186.    Each of Defendants CEDA, Casino, Tribe, and Livingston is liable for the acts of every other Defendant besides itself/himself based on contributory liability and vicarious liability, as alleged above.

187.    BMG has no adequate remedy at law.  Defendants' conduct has caused, and, if not enjoined, will continue to cause, irreparable harm to BMG.

### FOURTEENTH CLAIM FOR RELIEF
**All Defendants**
**(Colorado Consumer Protection Act)**
**(C.R.S. § 6-1-105)**

188.    BMG repeats, realleges and incorporates all of the allegations contained in the preceding paragraphs of this Complaint.

189.    As alleged herein, Defendants, in the course of their business, vocation, or occupation, have:

(a)    Knowingly passed off goods, services, or property of BMG as those of Defendants;

(b)    Knowingly made false representations as to the source, sponsorship, approval, or certification of goods, services, or property; and/or

   (c)  Knowingly made a false representation as to affiliation, connection, or association with BMG.

190. Defendants' deceptive trade practices, alleged above, significantly impact the public as actual or potential consumers of the Defendants' goods, services, or property.

191. Defendants' above described conduct was fraudulent, willful, knowing, and/or intentional.

192. In the course of BMG's business, BMG has been injured as a result of such deceptive trade practice alleged above.

193. As a direct and proximate result of Defendants' actions, BMG was damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. As to the First, Second and Third Claims for Relief, for (a) an order finding that Defendants infringed Plaintiff's copyrights; (b) a preliminary and permanent injunction against Defendants' continued infringement of Plaintiff's copyrights as permitted under 17 U.S.C. § 502; (c) an order requiring that all infringing materials in the possession, custody, or control of Defendants be delivered up and destroyed within 30 days of entry of judgment as permitted under 17 U.S.C. § 503; (d) an award of damages comprising Plaintiff's actual damages and the profits obtained by Defendants as provided in 17 U.S.C. § 504(b), or statutory damages as provided in 17 U.S.C. § 504(c); (e) costs and attorneys' fees as permitted under 17 U.S.C. § 505; and (f) such other and further relief as the Court deems just and proper.

2. As to the Fourth, Fifth, and Sixth Claims for Relief, for (a) entry of judgment in its favor and against Defendants on the claims of trademark infringement; (b) an award of

damages as provided in 15 U.S.C. § 1117(a) in the amount proven at trial; (c) for treble damages as provided in 15 U.S.C. § 1117(b); (d) preliminary and permanent injunctions against Defendant prohibiting the use of the trademark rights as provided in 15 U.S.C. §§ 1114 and 1116; (e) an assessment of interest, both prejudgment and postjudgment, on the damages awarded; (f) an award of attorneys' fees and costs incurred by Plaintiff in pursuing this action as provided in 15 U.S.C. § 1117(a); and (g) such other and further relief as the Court deems just and proper.

3.      As to the Seventh, Eighth, Ninth, Twelfth, Thirteenth, and Fourteenth Claims for Relief, for (a) entry of judgment in its favor and against Defendants on each of the claims; (b) an award of actual damages in an amount to be proven at trial; (c) as to the Seventh and Fourteenth Claims for Relief, for treble damages pursuant to 18 U.S.C. § 1964(c) and C.R.S. § 6-1-113(2), respectively; (d) punitive damages; (e) an assessment of interest, both prejudgment and postjudgment, on the damages awarded; (f) an award of attorneys' fees and costs incurred by Plaintiff in pursuing this action; and (g) such other and further relief as the Court deems just and proper.

4.      As to the Tenth and Eleventh Claims for Relief, for (a) entry of judgment in its favor and against Defendants on each of the claims; (b) an award of actual damages in an amount to be proven at trial; (c) an assessment of interest, both prejudgment and postjudgment, on the damages awarded; (d) an award of attorneys' fees and costs incurred by Plaintiff in pursuing this action to the extent permitted by contract; and (e) such other and further relief as the Court deems just and proper.

5.      The injunctive relief sought herein shall include, but is not limited to:   A preliminary and permanent injunction enjoining Defendants, and each of their respective agents,

servants, employees, attorneys, representatives, and all others acting on their behalf or in concert with them, (a) from marketing, selling, licensing, distributing or otherwise using, directly or indirectly, the BMG's eChampion® class, as well as all related training materials, (b) from accessing, using, copying, publishing, disclosing, transferring, selling or otherwise distributing, directly or indirectly, any of BMG's copyrighted material and any product incorporating or derived from all or part of BMG's copyrighted material; (c) from accessing, using, copying, publishing, disclosing, transferring, selling or otherwise distributing, directly or indirectly, the Infringing  Products and (d) requiring Defendants to deliver to BMG for destruction or other disposition all materials or tangible items of any kind containing or embodying any work that infringes on any BMG copyright, service mark or trademark.

## JURY DEMAND

BMG hereby demands a trial by jury on all claims and issues for which it is entitled to a jury.

Respectfully submitted this 11th day of August, 2006.

MARC PAPPALARDO, # 35339

_s/ Marc Pappalardo_
BREAKTHROUGH MANAGEMENT GROUP, INC.
1921 Corporate Center Circle
Longmont, CO  80501
Telephone:      303-827-0100
Fax:               775-429-4091

-and-

Neil L. Arney, #27,860
LATHROP & GAGE L.C.
4845 Pearl East Circle, Suite 300
Boulder, CO 80301
Telephone:      720-931-3000
Fax:               720-931-3001

STATE OF COLORADO, COUNTY OF BOULDER ss:


I, David Silverstein, am the President and Chief Executive Officer of Plaintiff Breakthrough
Management Group, Inc.  I have read the forgoing Verified Complaint and know the contents
thereof.  The contents are true to my own knowledge except as to matters therein stated to be
alleged upon information and belief, and as to those matters I believe them to be true.

_____
David Silverstein

Subscribed and sworn to me on August _11_, 2006,

_____
Notary Public

GAYLE F. HOWARD
NOTARY PUBLIC
STATE OF COLORADO

MY COMMISSION EXPIRES 11/15/2008



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System(Tess)

*TESS was last updated on Fri Aug 11 04:16:59 EDT 2006*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout | Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)* |

eChampion

| | |
|---|---|
| **Word Mark** | ECHAMPION |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Training and education, namely, providing classes and on-line classes in process improvement, process management, business performance, and business management methodologies, techniques, processes, and ideas, and development, research, design and improvement with respect to such methodologies, techniques, processes, and ideas, as well as distributing course materials used in connection with such training and education. FIRST USE: 20030830. FIRST USE IN COMMERCE: 20030830 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Design Search Code** | |
| **Serial Number** | 78378173 |
| **Filing Date** | March 3, 2004 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | December 21, 2004 |
| **Registration Number** | **2933205** |
| **Registration Date** | March 15, 2005 |
| **Owner** | (REGISTRANT) Breakthrough Management Group, Inc. CORPORATION COLORADO 2101 Ken Pratt Blvd., Suite 201 Longmont COLORADO 80501 |
| **Attorney of Record** | Marc Pappalardo |
| **Type of Mark** | SERVICE MARK |

**EXHIBIT A**

| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

TESS HOME   NEW USER   STRUCTURED   FREE FORM   BROWSE DICT   SEARCH OG   TOP   HELP

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System(Tess)

*TESS was last updated on Fri Aug 11 04:16:59 EDT 2006*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

**Logout**  Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*



| **Word Mark** | BREAKTHROUGH MANAGEMENT GROUP BMG |
|---|---|
| **Goods and Services** | IC 041. US 100 101 107. G & S: Training and education, namely, conducting classes and online classes in process improvement, process management, business performance, business management methodologies, techniques, processes and ideas, and development, research, design and improvement with respect to such methodologies, techniques, processes, and ideas, as well as distributing materials used in connection with such training and education, and consultation related thereto. FIRST USE: 20030531. FIRST USE IN COMMERCE: 20030531 |
| | IC 035. US 100 101 102. G & S: Business management consulting services in process improvement, process management, business performance, business management methodologies, techniques, processes and ideas, and development, research, design and improvement with respect to such methodologies, techniques, processes, and ideas. FIRST USE: 20030531. FIRST USE IN COMMERCE: 20030531 |
| | IC 009. US 021 023 026 036 038. G & S: Computer software for business process management, business process improvement, monitoring business performance, and monitoring business management methodologies, techniques, processes, and ideas. FIRST USE: 20030531. FIRST USE IN COMMERCE: 20030531 |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 26.09.13 - More than one square; Squares, more than one<br>26.09.21 - Squares that are completely or partially shaded<br>26.09.28 - Miscellaneous designs with overall square shape; Square shapes (miscellaneous overall shape) |
| **Serial Number** | 78378103 |
| **Filing Date** | March 3, 2004 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | December 28, 2004 |
| **Registration Number** | 2934988 |
| **Registration** | |

**EXHIBIT B**

| | |
|---|---|
| **Date** | March 22, 2005 |
| **Owner** | (REGISTRANT) Breakthrough Management Group, Inc. CORPORATION COLORADO 2101 Ken Pratt Blvd., Suite 201 Longmont COLORADO 80501 |
| **Attorney of Record** | Marc Pappalardo |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MANAGEMENT GROUP" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK. SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

TESS HOME    NEW USER    STRUCTURED    FREE FORM    BROWSE DICT    SEARCH OG    TOP    HELP

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY