**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT COURT OF COLORADO**

Civil Action No. 06-CV-01596-MSK-PAC

BREAKTHROUGH MANAGEMENT GROUP,
Inc., a Colorado Corporation,

        Plaintiff,

v.

CHUKCHANSI GOLD RESORT AND CASINO,
An entity organized under the laws  of The
Picayune Rancheria of the Chukchansi Indians;
JEFF LIVINGSTON, an adult individual; PICAYUNE
RANCHERIA OF THE CHUKCHANSI INDIANS, a
federally recognized Indian tribe; THE
CHUKCHANSI ECONOMIC DEVELOPMENT
AUTHORITY, an entity Organized under the laws of
the Picayune Rancheria Of the Chukchansi Indians;
RYAN STANLEY, an adult Individual; and VERNON
D'MELLO, an adult individual;

        Defendants.

---

**BRIEF IN SUPPORT OF CHUKCHANSI GOLD RESORT AND CASINO, PICAYUNE
RANCHERIA OF THE CHUKCHANSI INDIANS, AND THE CHUKCHANSI ECONOMIC
DEVELOPMENT  AUTHORITY'S MOTION TO DISMISS FOR LACK OF SUBJECT
MATTER JURISDICITON, IMPROPER VENUE AND FAILURE TO STATE A CLAIM**

The Picayune Rancheria of the Chukchansi Indians ("Tribe") is a federally recognized Indian tribe exercising jurisdiction over the Picayune Reservation in California. The Tribe exercises jurisdiction over the Reservation pursuant to the Constitution of Picayune Reservation. (Jackson Decl., Ex. C.)

Under the Tribe's Constitution, the Tribal Council is the governing body of the Tribe. (Jackson Decl., Ex. C, Article IV, Section 2.)   As such, the Tribal Council exercises constitutionally delegated powers.   (Id., Article V.)   Of particular importance to the allegations in the Complaint, Tribal Council has the power to:

1.   promulgate and enforce bylaws and ordinances necessary to carry out its powers under the Constitution;

2.   promulgate and enforce ordinances governing the conduct of the members of the Tribe, an non-members within the Tribe's jurisdiction;

3.   regulate the conduct of business activities within the exterior boundaries of the Picayune Reservation;

4.   manage all economic affairs and enterprises of the Tribe;

5.   charter subordinate organizations for economic purposes and to regulate the activities of all cooperative associations of members of the Tribe by ordinance; and

6.   to waive the Tribe's sovereign immunity from unconsented suit by two-thirds vote of all members of the Tribal Council

(Jackson Decl., Ex. C, Article V.)

In 2001, pursuant to its constitutional authority, the Tribal Council resolved to engage in Class III gaming under the provisions of the Indian Gaming Regulatory Act, 25 U.S.C. 2701, et seq.   (Jackson Declaration, Ex., D.)   The Tribe also resolved to create the Chukchansi Economic Development Authority ("CEDA") as a "body corporate and politic and an instrumentality of the Tribal Government, to develop and own the Tribe's proposed Class III gaming facility.  (Id.)

1

Pursuant to Tribal law, the CEDA, is governed by a seven member Board of Directors made up of the active members of the Tribal Council.  (Id.,Section 4(c).)  As a body politic and instrumentality of the Tribe the Board of Directors has the power to waive the CEDA's sovereign immunity.  (Id., Section 5(k).)  However, the Ordinance requires that:

> Any waiver of sovereign immunity shall be specific and limited as to (i) duration, (ii) the grantee, (iii) the scope of waiver, (iv) nature and description of the property or funds, if any, of the [CEDA], available to satisfy any order or judgment, (v) a particular court or courts having jurisdiction over the [CEDA], and (vi) the law that shall by applicable thereto.  Any express waiver of sovereign immunity by resolution or contract of the [CEDA] shall not be deemed a waiver of the sovereign immunity of the Tribe.

(Id., Section 12(b).)  Under the Ordinance, CEDA does not have the power to delegate authority to waive the CEDA's, or the Resort's, immunity.

The Tribe opened the Resort on June 25, 2003.  The Resort is the Tribe's only economic enterprise and currently employs approximately 1200 worker including a number of Directors.  None of the employees, or Directors of the Resort have authority to waive the Tribe's immunity from suit, or otherwise consent to the jurisdiction of any court over the Tribe, the Tribal enterprises, the CEDA and the Resort.

Breakthrough Management Group, Inc. ("BMG") is in the business of providing "Six Sigma," "Lean Six Sigma," and "Lean" training and consulting services.  (Complaint, ¶ 20.) BMG alleges that Defendants Ryan Stanley ("Stanley") and Vernon D'Mello ("D'Mello") purchased, allegedly on behalf of the Casino, single person user licenses for certain BMG classed entitled "eChampion®," and "eBlackBelt®."  BMG alleges that each of these courses contains an End User License Agreement ("EULA") that prohibits the copying, distributing, or rewriting any portion of the images, audiofiles or other materials provided in the two classes.  (Complaint, ¶¶ 25-26, 73.)

BMG does not allege that the Tribe, CEDA, or the Resort had any actual knowledge of the EULA, or even the eChampion®, or eBlackBelt® training.  Nonetheless, BMG alleges that the Resort breached the BMG EULA by improperly distributing, copying, using, rewriting and/or publishing the eChampion® and eBlackBelt® training courses by failing to display all copyright and proprietary notices, and by accessing BMG's courses for the sole purpose of copying the contents of them for use within the Resort.  (Complaint, ¶¶ 175-175, 182-184.)

## LEGAL STANDARD FOR MOTION TO DISMISS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) addresses subject matter jurisdiction.  Fed.R.Civ.P.12(b)(1.)  Federal courts are courts of limited jurisdiction, there is a presumption against federal jurisdiction and plaintiffs bear the burden of proving federal jurisdiction.  *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2006).

Sovereign immunity is jurisdictional in nature.  *EFW v. St. Steven's Indian High School*, 264 F.3d 1297, 1303 ("*St. Steven's*") (10th Cir. 2001.)  Absent a proper and valid waiver of immunity, a court lacks subject matter jurisdiction over an entity that enjoys inherent immunity from suit.  *St. Steven's*, 264 F.3d at 1304.  Consequently, a party may properly assert its inherent immunity from suit in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).  Once a tribe asserts immunity, the Plaintiff bears the burden of establishing a proper and valid waiver of immunity.  *Id.* at 1303.  If the Plaintiff cannot satisfy its burden, as is the case here, Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss the Tribe and tribal entities.  *Id.*, at 1303-05.

*///*

I.     **Tribal Defendants Are Immune From Suit.**

Under established principles of law, Indian tribes enjoy inherent immunity from suit coextensive with that of the United States. *Walton v. Tesuque Pueblo*, 443 F.3d 1274, 1277 (10th Cir. 2006); *Berrey v. Asarco.*439 F.3d 636, 642 (10th Cir. 2006); *St. Stevens*, at 1303-05.  A tribe's inherent immunity from suit extends to both governmental and business matters that occur on or off the tribe's reservation.   *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.* ("*Kiowa Tribe*") 573 U.S. 751, 755 (1998.)

Tribal sovereign immunity is a mandatory doctrine that is not subject to judicial discretion.  *Kiowa Tribe*, 573 U.S. 754-55.   Thus, absent an express congressional abrogation immunity, or a clear, and unequivocal waiver of immunity, Indian tribes are not subject to suit. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978.)  The principles of tribal immunity apply equally to tribal governmental entities and tribal business enterprises. *Indian Country, U.S.A., Inc. v. State of Oklahoma*, 829 F.2d 967, 982-83 (10th Cir. 1987); *Allen v Gold Country Casino*, 464 F.3d 1044, 1046-47 (9th Cir. 2006); *Multimedia Games, Inc. v. WLGC Acquisition Corp.*, 214 F.Supp.2d 1131, 1135 (N.D.Okla. 2001.)  As one court in particular recognized:

> The ability to contract as an economic entity impacts [a] tribe's fiscal resources by binding or obligating the funds of [a] tribe.  It follows that corporate contractual provisions are actually economic matters which directly affect a sovereign's right of self government.  In this way, the [tribal] business entity is simply the tribe's alter ego: and thus, the real party in interest is the tribe because the vulnerability of the tribe's coffers is at issue when contracting in a commercial environment.

*Multimedia Games, Inc.*, 214 F.Supp.2d at 1135.  Thus, like tribal governmental entities, tribal business entities are not subject to suit unless there is a clear, express, unambiguous waiver of immunity or a clear congressional abrogation of the entities immunity. *Id.*

Waiving sovereign immunity is voluntary, therefore there is a general presumption against finding waivers. *Pan American v. Sycuan Band of Mission Indians*, 884 F.2d 416, 418 (9th Cir. 1989); *See also Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978.)  A plaintiff seeking to circumvent a tribe's immunity has the burden of proving a proper and effective waiver of immunity. *Kiowa Tribe*, 573 U.S. 754-55.  To satisfy this burden a plaintiff must establish that there is a clear, express and unequivocal wavier of immunity issued by an individual with the authority to waive immunity. *See  Case v. Terrell*, 78 U.S. 199, 202 (1870) (noting that a federal official has no authority to waive the United State's immunity and subject it to the jurisdiction of any court without some provision of law that grants the official such authority); *Carr v. United States*, 98 U.S. 433, 438 (1878) (noting that the Secretary of Interior did not have authority to waive the immunity of the United States); *See also United States v. Village of Little Chute Wisconsin*, 248 F.2d 228, 231 (7th Cir 1957.)

## A. Plaintiff cannot establish that the tribal defendants waived their immunity.[1]

The Plaintiff's complaint does not allege that the Tribe, or the CEDA, or the Casino. Rather, the Complaint alleges that two employees at the Casino, Defendant Stanley and Defendant D'Mello, waived the Tribes, the CEDA's, and the Casino's inherent immunity by purportedly agreeing to Plaintiffs EULA.  (Complaint, ¶¶ 31, 63, 71-73.)  The Complaint alleges that the "California Gaming Act [sic]" and its definition of "Key Employee" authorized Stanley and D'Mello to waive the Tribal Defendants' immunity.  (Complaint, ¶¶ 11, 31, 63.)

---

[1]  BMG does not allege that Congress abrogated the Tribe's immunity for any of the causes of action alleged in BMG's complaint.  Consequently, congressional abrogation is not an issue in this matter.  Instead, under established principles of law, in order to maintain this action, BMG must point to, and prove there is, a valid waiver of the Tribe's immunity.

The Plaintiff's assertions that Defendants Stanley and D'Mello waived the Tribe's immunity are faulty for two critical reasons.

First, the California Gambling Control Act, California Business and Professions Code, section 19800 et seq, and its provisions related to "Key Employees," on which BMG largely relies, does not apply to sovereign Indian tribes. *California v. Cabazon*, 480 U.S. 202, 221-22 (1987) (noting that regulation of tribal gaming facilities under state law would "impermissibly infringe" on tribal government.) Gaming on tribal lands is exclusively, and preemptively, governed by the Indian Gaming Regulatory Act, 25 U.S.C. § 2701, et seq. *See* 25 U.S.C. § 2702; *United Keetoowah Band of Cherokee Indians v. State of Oklahoma*, 927 F.2d 1170, 1178 (10th Cir. 1991) (noting that even if a state had jurisdiction under Public Law 280 to prosecute violations of state gaming laws occurring in Indian country, "the passage of the Indian Gaming Regulatory Act has preempted" it from exercising jurisdiction in Indian country without the authority of a tribal-state gaming compact.) *See also Gaming Corp. of America v. Dorsey and Whitney*, 88 F.3d 536, 543 (8th Cir. 1996) (noting the complete preemptive effect of the IGRA on state law.) Consequently, the California Gambling Control Act has no application to the claims asserted in the Complaint. Moreover, like other state laws, this inapplicable state law cannot provide any individual with the authority to waive a separate sovereign's inherent immunity from suit. Only Congress has that authority. (*Santa Clara Pueblo*, 436 U.S. at 58.)

Second, tribal law prohibits the Casino, Stanley, or D'Mello from waiving the Tribal Defendants' immunity. Article V of the Tribe's Constitution provides that the Tribal Council – the governing body of the Tribe – shall have the authority "to waive the Tribe's sovereign immunity from unconsented suit, *provided*, that any such waiver must be approved by a

two-thirds majority of all members of the Tribal Council." (Jackson Decl, Ex. C, Article V, Section (r).)   Because waivers of tribal sovereign immunity are purely voluntary, and because waivers of immunity effect a tribe's sovereign right of self-government, waivers of immunity must be done in a manner that complies with tribal law.   Moreover, only individuals or entities authorized by the Tribe have the power to waive immunity. *See Case v. Terrell*, 78 U.S. 199, 202 (1870) (noting that a federal official has no authority to waive the United State's immunity and subject it to the jurisdiction of any court without some provision of law that grants the official such authority); *Carr v. United States*, 98 U.S. 433, 438 (1878) (noting that the Secretary of Interior did not have authority to waive the immunity of the United States); *See also United States v. Village of Little Chute Wisconsin*, 248 F.2d 228, 231 (7th Cir 1957.)

The Tribe has never delegated the authority to waive the Tribe's or a tribal entity's immunity to the Casino or any employee of the Casino.   (Jackson Decl. ¶¶ 11, 12.) Critically, nothing in, or attached to the Complaint shows that the Tribe, or CEDA agreed to the UELA that the Complaint asserts waives the Tribal Defendants' immunity.   Likewise, nothing in, or attached to the Complaint, indicates that the Tribe authorized Stanley or D'Mello, or anyone else, to waive the Tribal Defendants' immunity.

As the declaration of Dixie Jackson, the Chairperson of the Tribe's Tribal Council, demonstrates, the Tribe does not delegate the authority to waive the Tribe's, CEDA's, or the Casino's immunity from suit to any employee of the Casino.   (Jackson Decl., ¶ 10.) Consequently, the Plaintiff has not, and cannot, satisfied its burden of establishing a valid and effective waiver of the Tribe's, CEDA's, or the Casino's inherent immunity from suit.

Therefore, this Court does not have subject matter jurisdiction over the Plaintiff's claims against the Tribe, CEDA and the Casino, and must dismiss them in their entirety.

>    **B.    Apparent authority is insufficient to waive the Tribal Defendants' Immunity.**

The Complaint suggests that, even if defendants Stanley and D'Mello did not have the actual authority, they had the apparent authority to waiver the Tribal Defendants. This claim is unfounded. Contrary to the Plaintiff's suggestion, courts have recognized for over a century that in the absence of an express authorization, no officer, or employee has the authority to waive a sovereign's inherent immunity from suit. *See  Case v. Terrell*, 78 U.S. 199, 202 (1870) (noting that a federal official has no authority to waive the United State's immunity and subject it to the jurisdiction of any court without some provision of law that grants the official such authority); *Carr v. United States*, 98 U.S. 433, 438 (1878) (noting that the Secretary of Interior did not have authority to waive the immunity of the United States); *See also United States v. Village of Little Chute Wisconsin*, 248 F.2d 228, 231 (7th Cir 1957.)

The same is true with respect to the sovereign immunity of Indian tribes, which is coextensive with that of the United States. Tribal officials, agents, and employees may not waive a tribe's immunity unless there is some provision of tribal law expressly granting the official such authority. *World Touch Gaming, Inc. v. Massena Management, LLC*, 117 F.Supp.2d 271, 277 (N.D.N.Y. 2000) As the Court stated in *World Touch Gaming, Inc.*:

>    [A]ccording to the unequivocal language of the Tribe's Constitution and Civil Jurisdiction Code, only the Tribal Council can waive the Tribe's sovereign immunity, and such a waiver must be express. The Tribal Council did not authorize [the tribal agent] to waive sovereign immunity, nor did the Tribal Council expressly waive the Tribe's sovereign immunity.

> Thus, the Tribe's sovereign immunity was not waived, and it is immune from suit.

*World Touch Gaming, Inc.*, 117 F.Supp.2d at 277.

Thus, pursuant to applicable law, neither defendant Stanley, nor defendant D'Mello had the authority to waive the Tribe's immunity.  Moreover, the Tribe itself did not waive the Tribe's immunity, nor did it authorize defendant D'Mello or Stanley agree to the Plaintiff's EULA on behalf of the Tribal Defendants.  (Jackson Decl., ¶¶ 11-12.)  Consequently, there is no waiver of the tribal defendants' immunity and they are each immune from suit.

## II.  Plaintiff's Copyright Claims (First through Third) and State Law Claims Eight and Nine Should Be Dismissed As A Matter of Law For Lack of Subject Matter Jurisdiction and Preemption

The First through Third Claims in the Complaint assert federal copyright infringement. Plaintiff, however, does not plead or otherwise show that it obtained a federal copyright registration from the Copyright Office for either its allegedly infringed eChampion® or eBlack Belt® courses.  An issued registration is an *essential* jurisdictional predicate for any copyright infringement claim.  *See* 17 U.S.C. §411(a).  Without, an issued registration, this Court does not possess subject matter jurisdiction over the First through Third Causes of Action.  Moreover, separate and apart from that fatal defect, Plaintiff's Eighth and Ninth Claims allege Colorado state law causes of action that are preempted by the Copyright Act, 17 U.S.C. § 301, and therefore cannot be brought in this or any other court.

### A.  There Is No Subject Matter Jurisdiction For Plaintiff's Federal Copyright Claim

Each of the First through Third claims of the Complaint asserts infringement of Plaintiff's purported federal copyrights under the Copyright Act, 17 U.S.C. §§ 101 et. seq.

(*See* Complaint ¶¶ 90 - 122).   The Copyright Act, however, prohibits **any** copyright claim until "....registration of the copyright claim has been made in accordance with this title."[2]

Thus, Plaintiff was required to secure issued federal copyright registrations for both of its eChampion® and eBlack Belt® classes **before** filing this case to establish subject matter jurisdiction in this (or any other) federal court. *La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1200-1201 (10th Cir. 2005)*; see also M.G.B. Homes, Inc. v. Ameron Homes, Inc., 903 F.2d 1486, 1488 (11th Cir. 1990)* ("The registration requirement is a jurisdictional prerequisite to an infringement suit.").[3]

Plaintiff, however, does not assert that it **actually** received **any** copyright registrations for their e-classes **before** filing this action.   Further, Plaintiff fails to supply copies of registrations for its e-classes or registration numbers for any such registrations. (In contrast, Plaintiff cites and provides copies of its alleged trademark registrations). Moreover, a search of the public, computer accessible records of the Copyright Office shows no signs of the required issued registrations. (*See* Michalowicz Declaration, Ex. A - C).   Plaintiff's unsupported contention that it "owned and controlled" federal copyrights and "complied" with Title 17, (*See* Complaint ¶¶ 96, 97),is not sufficient to satisfy 17 U.S.C.§411(a).

Accordingly, Plaintiff's First Claim (copyright infringement) should be dismissed with prejudice for lack of subject matter jurisdiction.   Plaintiff's Second Claim (contributory copyright infringement) and the Third Claim (vicarious copyright infringement) also

---

[2]  "Preregistration" is available under 17 U.S.C. § 408(f)(2) to those works that have "a history of infringement prior to authorized distribution." 37 C.F.R. § 202.16(b)(1)-(2). Plaintiff's e-classes are not eligible for preregistration. 37 C.F.R. § 202.16(b)(3).

[3]  *See also Mays & Associates, Inc. v. Euler* 370 F.Supp.2d 362, 368 (D.Md.2005); *Corbis Corp. v. Amazon.com, Inc.* 351 F.Supp.2d 1090, 1112 (W.D.Wash. 2004); *Loree Rodkin Management Corp. v. Ross-Simons, Inc.*, 315 F.Supp.2d 1053, 1055 (C.D.Cal.2004).

necessarily require registered copyrights that can be enforced in this Court. They should be dismissed for lack of subject matter jurisdiction as well.

**B.     Plaintiff's State Law Eighth and Ninth Claims
Are Preempted By Federal Copyright Act**

Under 17 U.S.C. § 301, a state common law or statutory claim is preempted if: (1) the work is within the scope of the "subject matter of copyright" as specified in 17 U.S.C. §§ 102, 103; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106. *Harolds Stores v. Dillard Dep't Stores*, 82 F.3d 1533, 1542-3 (10th Cir. 1996); *Gates Rubber Co. v. Bando Chem. Indus.*, 9 F.3d 823, 847 (10th Cir. 1993); *Ehat v. Tanner,* 780 F.2d 876, 878 (10th Cir. 1985).

A state law claim falls within the first, subject matter requirement if the work at issue qualifies as copyrightable subject matter under 17 U.S.C. §§102 and 103.  *Harolds Stores,* 82 F.3d at 1542.  Plaintiff affirmatively alleges that both of its purported eChampion® and the eBlack Belt® classes fall within federal copyright protection under those statutes. (*See e.g.* Complaint ¶¶ 22, 96 and 97).

Plaintiff further alleges state law claims seeking relief identical to that offered under the Copyright Act.   *See Gates Rubber Co. v. Bando Chemical Industries, Ltd.*  9 F.3d at 847.  Thus, those state law claims satisfy the second, "equivalent rights" requirement and are preempted as a matter of law. *See e.g. Id.; Stromback v. New Line Cinema*, 384 F.3d 283, 301 (6th Cir. 2004).   They should be dismissed with prejudice, regardless of the Court's ruling on Plaintiff's copyright claims.

///

///

### 1.    Plaintiff's Eight Claim For State Law "Conversion" Is Preempted

Plaintiff's Eighth Claim asserts a state law cause for "converting" BMG's eChampion® and eBlack Belt® classes by "recording" and copying portions of those e-classes accessed through Plaintiff's web site. (*See* Complaint ¶¶ 165-167).   Colorado defines conversion as "any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." *Allstate Ins. Co. v. Murray Motor Imps. Co.*, 357 F.3d 1135, 1139 (10th Cir. 2004). The Copyright Act preempts all claims for conversion of copyright protected work based on allegations of unauthorized copying.  *See Strauss v. Hearst Corp.,* 8 U.S.P.Q.2d 1832, 1839 (S.D.N.Y 1988) (a claim for conversion for unauthorized reproduction of a photo in a magazine was preempted.)

The Complaint acknowledges that Defendants paid for and were granted authorization to use the eChampion® and eBlack Belt® classes. (Complaint ¶¶ 22, 23, 65 and 66.) The **only** allegation supporting Plaintiff's conversion count is Defendants' purported unauthorized reproduction of portions of its classes – exactly the same acts Plaintiff asserts for its copyright claims. (*See* Complaint ¶¶82, 91-95, 165-167).   This alleged act is expressly covered by the Copyright Act. 17 U.S.C. §106. Thus, Plaintiff's conversion is preempted and should be dismissed. *See Ehat,* 780 F.2d at 878; *Ippolito v. Ono-Lennon,* 526 N.Y.S.2d 877, 883 (N.Y. Misc. 1988), *mod* 150 A.D.2d 300, 303 (1st Dept 1989) (conversion claim preempted as Plaintiff's right to reproduce and distribute were equivalent to Copyright Act); 17 U.S.C. § 301.

///

///

///

>2.   **Plaintiff's Ninth Claim For State Law
>     "Misappropriation" Is Preempted**

Similarly, Plaintiff's Ninth Claim contends that Defendants "misappropriated" portions of Plaintiff's e-classes by copying them. (*See* Complaint ¶¶ 168-171). Colorado law recognizes a claim for "misappropriation" if a person improperly appropriates a product of another's expenditure of labor, skill, and money. *Donchez v. Coors Brewing Co.,* 392 F.3d 1211, 1221 (10th Cir. 2004).

Again, the "product" that Plaintiff contends was "misappropriated" are the portions of the eChampion® and the eBlack Belt® e-classes that Plaintiff alleges are copyrightable under 17 U.S.C. §§102 and 103. (*See* Complaint ¶¶ 54, 55, 82, 91-95, 168-171). The asserted "misappropriation," again, is Defendants' copying of portions of Plaintiff's eChampion® and eBlack Belt® classes. (*Id.*). Thus, Plaintiff once again asserts a state law cause of action that is indistinguishable from Plaintiff's copyright claim (*i.e.* improper copying, distribution, etc. of the e-class materials.) Accordingly, Plaintiff's state law "misappropriation" claim also is preempted and should be dismissed with prejudice. *See Ehat,* 780 F.2d at 878; *Warner Bros. Inc. v. American Broadcasting Co.,* 720 F.2d 231, 247 (2d Cir. 1983) ("state law claims that rely on the misappropriation branch of unfair competition are preempted."); 17 U.S.C. §301.

## III.   JOINDER IN CO-DEFENDANTS' ARGUMENTS

The Tribal Defendants hereby join in the arguments made by Co-Defendants Livingston and Stanley. In particular, the Tribal Defendants join in Sections II(C) and II(D).

///

///

13

## **CONCLUSION**

For the foregoing reasons the Tribal Defendants respectfully request that the Court dismiss the Plaintiff's Complaint in its entirety as it pertains to the Tribe, CEDA, and the Resort.

Respectfully Submitted this 27th day of October, 2006.

Michael A. Robinson, Esq.
Monteau & Peebles LLP
Attorney for the Chukchansi Gold
Resort and Casino, Picayune
Rancheria of the Chukchansi Indians
and Chukchansi Economic
Development Authority

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT COURT OF COLORADO**

Civil Action No. 06-CV-01596-MSK-PAC

BREAKTHROUGH MANAGEMENT GROUP,
Inc., a Colorado Corporation,

        Plaintiff,

v.

CHUKCHANSI GOLD RESORT AND CASINO,
An entity organized under the laws of The
Picayune Rancheria of the Chukchansi Indians;
JEFF LIVINGSTON, an adult individual; PICAYUNE
RANCHERIA OF THE CHUKCHANSI INDIANS, a
federally recognized Indian tribe; THE
CHUKCHANSI ECONOMIC DEVELOPMENT
AUTHORITY, an entity Organized under the laws of
the Picayune Rancheria Of the Chukchansi Indians;
RYAN STANLEY, an adult Individual; and VERNON
D'MELLO, an adult individual;

        Defendants.

**BRIEF IN SUPPORT OF CHUKCHANSI GOLD RESORT AND CASINO, PICAYUNE
RANCHERIA OF THE CHUKCHANSI INDIANS, AND THE CHUKCHANSI ECONOMIC
DEVELOPMENT  AUTHORITY'S MOTION TO DISMISS FOR LACK OF SUBJECT
MATTER JURISDICITON, IMPROPER VENUE AND FAILURE TO STATE A CLAIM**