IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-CV-01596-MSK-PAC

BREAKTHROUGH MANAGEMENT
GROUP, Inc., a Colorado corporation

          Plaintiff,

v.

CHUKCHANSI GOLD CASINO AND
RESORT, an entity organized under the
laws of The Picayune Rancheria of The
Chukchansi Indians;
JEFF LIVINGSTON, an adult individual;
PICAYUNE RANCHERIA OF THE
CHUKCHANSI INDIANS, a federally-
recognized Indian tribe;
THE CHUKCHANSI ECONOMIC
DEVELOPMENT AUTHORITY, an entity
organized under the laws of The Picayune
Rancheria of The Chukchansi Indians;
RYAN STANLEY, an adult individual; and
VERRON D'MELLO, an adult individual;

          Defendants.

DECLARATION OF DIXIE JACKSON IN SUPPORT OF MOTION TO DISMISS
SUBMITTED BY THE PICAYUNE RANCHERIA OF THE CHUKCHANSI
INDIANS, THE CHUKCHANSI ECONOMIC DEVELOPMENT AUTHORITY,
AND THE CHUKCHANSI GOLD RESORT AND CASINO

I Dixie Jackson, hereby declare as follows:

      1.     Unless otherwise specified I make this declaration based on my own personal

knowledge; and, if called upon to do so, could and would competently testify as to these matters:

2.    I am a member of the Picayune Rancheria of the Chukchansi Indians ("Tribe")
and currently am the elected Chairperson of the Tribe's Tribal Council. I am also the
Chairperson of the Board of Directors of the Chukchansi Economic Development Authority
("CEDA"). I make this declaration in support of the Tribe's, the CEDA's and the Chukchansi
Gold Resort Casino's joint motion to dismiss pursuant to Federal Rule of Civil Procedure
12(b)(1) and 12(b)(6).

3.    From time immemorial the Tribe has occupied lands located in the western
foothills of the Sierra Nevada Mountains in what is now Madera County California. The Tribe's
current reservation consists of 80 acres of land near the town of Coarsegold, California.

4.    For a period during the 1960's and 1970's the Tribe lost it's land and its tribal
status due to the United States general policy of terminating Indian tribes and ending all federal
protection for individual Indians and their tribes. The federal act that stripped the Tribe of its
Indian status and its land was the California Rancheria Act of 1958, P.L 85-671.
In 1979 a number of individual Indians sued the United States for failure to comply with the
provisions of the California Rancheria Act. In that case *Hardwick v. United States*, Case
Number C-79-1710-SW, D.C N Cal, the plaintiffs sought reinstatement of their Indian status. In
addition the plaintiffs sought to reestablish their reservation boundaries and all of the federal
protections and benefits they enjoyed prior their termination.

5.    In 1983, the United States District Court for the Northern District of California
entered an order, pursuant to the agreement of the United States, that acknowledged the Tribe as
a federally recognized Tribe. (A true and correct copy of the 1983 Order on Stipulated Judgment
is attached hereto as Exhibit A.) In 1987, the same court entered an Order on a second Stipulated
Judgment that acknowledged that the Tribe and the Tribe's reservation were not lawfully
terminated. Therefore, the court reestablished the boundaries of the Picayune Rancheria,
declared the land within the boundaries of the Rancheria to be "Indian country," and provided

that the Rancheria lands, like all other *reservation* land in the United States, were subject to federal taxes. (A true and correct copy of the 1987 Order on Stipulated Judgment is attached hereto as Exhibit B.)

6.     In 1988, after receiving the restorative benefit of *Hardwick v. United States*, the Tribe adopted the Constitution of the Picayune Reservation ("Constitution.") (A true and correct copy of the Constitution is attached hereto as Exhibit C.)

7.     Pursuant to Article IV, Section 2 of the Constitution, the governing body of the Tribe is the Tribal Council. As the governing body of the Tribe, the Tribal Council has specifically delegated powers. The Tribal Council's powers, which are set out in Article V of the Constitution, include, but are not limited to: the power to regulate business activities on the Picayune Rancheria, to manage all economic affairs of the Tribe, to charter subordinate organizations for economic purposes and to regulate the activities of all cooperative associations of members of the Tribe by ordinance, the power to enact tribal laws through ordinances and resolutions, and the power to waive the Tribe's sovereign immunity from suit. However, under the Constitution a waiver of immunity is only effective if it is approved by a two-thirds majority of the Tribal Council.

8.     In 2001, acting pursuant to its constitutional authority, the Tribal Council resolved to engage in Class III Indian gaming as provided for under the Indian Gaming Regulatory Act, 25 U.S.C. 2701, *et seq.* Therefore the Tribal Council passed Resolution Number 2001-11 stating this intention. (A true and correct copy of Resolution Number 2001-11 is attached hereto as Exhibit D.) In Resolution 2001-11 the Tribal Council also resolved to establish the CEDA to govern economic development on the Picayune Reservation, and to own and operate the proposed Class III tribal gaming facility. To establish the CEDA, in Resolution 2001-11, the Tribal Council enacted the Ordinance of the Picayune Rancheria Establishing and Governing the Chukchansi Economic Development Authority ("CEDA Ordinance.") (A copy of the CEDA Ordinance is included as an attachment to Exhibit D.)

9.     Pursuant to the CEDA Ordinance, the CEDA is a tribal governmental entity created to act on behalf of the Tribe through the exercise of limited delegated powers to further the economic prosperity of the Tribe, to own and operate the Chukchansi Gold Resort and Casino ("Resort") the Tribe's Class III gaming facility. The CEDA is governed by a seven member Board of Directors. The Board of Directors consists exclusively of the active and sitting members of the Tribal Council.

10.     Because the limited purpose of the CEDA the Tribal Council delegated only limited and specific powers to the CEDA Board. In particular, pursuant to the CEDA Ordinance the CEDA may, among other things: (1) own and operate the Resort, to manage assets revenues, accounts property and other interests of the CEDA, and to waive the CEDA's sovereign immunity from suit. The CEDA does not have the power to delegate the authority to waive the CEDA's immunity from suit, nor does the CEDA have the authority to waive the Tribe's immunity. In addition, pursuant to Section 12 of the CEDA Ordinance, any waiver of the CEDA's sovereign immunity authorized by the Board of Directors must be limited as to: (1) duration, (2) the grantee, (3) the scope of the wavier, (4) the nature and description of the property or funds available to satisfy a claim or judgment, (5) the particular court, and (6) the applicable law.

11.     The Board of Directors for CEDA only considers waivers of immunity related to the CEDA and the Resort. To effectuate a waiver, the Board of Directors requires a two thirds majority vote of the Board of Directors approving the waiver. The Board of Directors does not, as a general matter, and has not ever, authorized any individual Board member Resort Director or Resort employee to agree to any contract that may be construed as including a waiver of sovereign immunity. The decision to waive the CEDA's immunity is reserved exclusively to the Board of Directors.

12.     Neither the CEDA Board, nor the Tribal Council ever reviewed, or approved the End User License Agreement that the Plaintiff's claim waived the Tribe's, the CEDA's, and the

Resort's immunity from suit. Similarly, neither the CEDA Board, nor the Tribal Council ever authorized Defendants Ryan Stanley or Vernon D. Mello to agree, in any way, to subject the Tribe, the CEDA, or the Resort to the jurisdiction of any court. As a general matter of practice, because the Tribe's inherent immunity from suit is such an important aspect of the Tribe's sovereignty, the Tribe and the CEDA Board never delegate the decision to waive immunity to any individuals and especially not employees. These decisions are reserved the Tribal Council and the CEDA Board exclusively.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 27th day of October 2006, in Coarsegold, California.

Loxie Inelgon, Declarant



ORIGINAL

ORIGINAL
FILED
AUG - 2 1983

AVID J. RAPPORT
LESTER J. MARSTON
California Indian Legal Services
200 West Henry Street
Post Office Box 488
Ukiah, California 95482
Telephone: (707) 462 3825

RECEIVED
WILLIAM L. WHITTAKER
CLERK, U.S. DISTRICT COURT
N. DISTRICT OF CALIFORNIA

JUL 21 1983

Attorneys for Plaintiffs

JOSEPH P. RUSSONIELLO
United States Attorney
RODNEY H. HAMBLIN
Assistant United States Attorney
PAUL E. LOCKE
Assistant United States Attorney
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
Telephone: (415) 556-8134

WILLIAM L. WHITTAKER
CLERK, U. S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Attorneys for Federal Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TILLIE HARDWICK, et al.,

                    Plaintiffs

        v.

UNITED STATES OF AMERICA, et al.,

                    Defendants

No. C-79-1710-SW

STIPULATION FOR ENTRY
OF JUDGMENT

        The parties to the above-entitled action, recognizing
the uncertainties in law and the burden of further litigation,
and in order to make mutually beneficial settlement of these
actions, subject to approval of the Court pursuant to Federal
Rules of Civil Procedure, Rule 23(e), stipulate that the Court
may enter judgment as follows:

/ / / / / / /

Exhibit A

1  Rancheria Act 1/ and any Indian heirs, legal or successors in

interest of such persons with respect to any real property they

received as a result of the implementation of the California

4  Rancheria Act.

5      3.  The status of the named individual plaintiffs and

6  other class members of the seventeen rancherias named and

7  described in paragraph 1 as Indians under the laws of the United

8  States shall be restored and confirmed.  In restoring and

9  confirming their status as Indians, said class members shall be

10  relieved from the application of Sections 2(d) and 10(b) of the

11  California Rancheria Act and shall be deemed entitled to any of

12  the benefits or services provided or performed by the United States

13  for Indians because of their status as Indians, if otherwise quali-

14  fied under applicable laws and regulations.

15      4.  The Secretary of the Interior shall recognize the

16  Indian Tribes, Bands, Communities or groups of the seventeen

17  rancherias listed in paragraph 1 as Indian entities with the same

18  status as they possessed prior to distribution of the assets

19  of these Rancherias under the California Rancheria Act, and said

20  Tribes, Bands, Communities and groups shall be included on the

21  Bureau of Indian Affairs' Federal Register list of recognized

22  tribal entities pursuant to 25 CFR, Section 83.6(b).  Said Tribes,

23  Bands, Communities or groups of Indians shall be relieved from

24  the application of section 11 of the California Rancheria Act and

25  shall be deemed entitled to any of the benefits or services

26  provided or performed by the United States for Indian Tribes.

27  _____

1/ Act of August 18, 1958, P.L. 85-671, 72 Stat. 69, as
28  amended by the Act of August 11, 1964, 78 Stat. 390.

-5-    EXH. A PG. 2 OF 15 PGS

Bands, Communities or groups because of the status as Indian

Tribes, Bands, Communities or groups.

5. The Court shall not include in any judgment entered pursuant to this stipulation any determination of whether or to what extent the boundaries of the rancherias listed and described in paragraph 1 shall be restored and shall retain jurisdiction to resolve this issue in further proceedings herein.

6. Any named individual plaintiff or class member who received or presently owns fee title to an interest in any former trust allotment by reason of the distribution of the assets of any of the Rancherias listed in paragraph 1 shall be entitled to elect to restore any such interest to trust status, to be held by the United States for the benefit of such Indian person(s).

7. Within two years of date of notice of this judgment, as provided in paragraph 9, the Indian Tribes, Bands, Communities or groups of the seventeen rancherias listed in paragraph 1 that are recognized by the Secretary of the Interior pursuant to paragraph 4 herein may arrange to convey to the United States all community-owned lands within their respective rancherias to which the United States issued fee title in connection with or as the result of the distribution of the assets of said rancherias, to be held in trust by the United States for the benefit of said Tribes, Bands, Communities or groups, authority for the acceptance of said conveyances being vested in the Secretary of Interior under section 5 of the Act of June 18, 1934, "the Indian Reorganization Act," 48 Stat. 985, 25 U.S.C. §465 as amended by section 203 of the

/ / / / / / /

-4-

ndian Land Consolidation Act, Pub. L. 97-459, Title II, 96 Stat.

15 and/or the equitable powers of this court.

2.   Any named plaintiff or other class member herein may elect to convey to the United States any land for which the United States issued fee title in connection with or as the result of the distribution of assets of said rancheries to be held in trust for his/her individual benefit or the benefit of any other member or members of the rancheria, authority for the acceptance of said conveyances being vested in the Secretary of the Interior under section 5 of the Act of June 18, 1934, 'The Indian Reorganization Act,' 48 Stat. 985, 25 U.S.C. §465 as amended by section 203 of the Indian Land Consolidation Act, Pub. L. 97-459, Title II, 96 Stat. 512 and/or the equitable powers of this court.

5.   Upon entry of judgment herein the United States shall give personal mail notice to each individual plaintiff and other class members (to the extent such persons can be identified and located through the exercise of reasonable efforts) that said indi-viduals may elect to return their lands to trust pursuant to the judgment entered pursuant to this stipulation.   Said notice shall advise that the Bureau of Indian Affairs will assist those indivi-duals desiring to convey lands to the United States, including pro-viding for forms and instructions.   In addition, the United States shall aid and assist class members in perfecting said conveyances by obtaining any necessary policies of title insurance or taking any other actions administratively required to complete such conveyances. Nothing in this Stipulation shall require the United States to pro-vide funds for the payment of real property taxes which may have

//

accrued in the past or may accrue in the future with respect to
lands located on any Rancheria as described in Exhibit A; provided,
however, that this stipulation does not represent a concession by
any party hereto that any of said property is subject to real
property taxes.

The United States shall also give general notice of the
rights provided by this paragraph 9 by publishing notice once each
week for one month in newspapers of general circulation most likely
to be read by class members, and by posting notice in a conspicuous
location on or near each of the seventeen rancherias named in
paragraph 1.

10   The Secretary of the Interior, named individual
plaintiffs and other class members agreed that the distribution
plans for these Rancherias shall be of no further force and effect
and shall not be further implemented; however, this provision shall
not affect any vested rights created thereunder.

11.   All claims whatsoever for money damages against the
United States resulting from the distribution of the assets of the
seventeen rancherias named in paragraph 1 under the Rancheria Act
and arising out of the implementation of said Act shall be dismissed
with prejudice, plaintiffs having specifically considered the poten-
tial value of said claims, the probability of the success thereof,
and the value of the relief to be obtained under this settlement
agreement.

12.   For the purpose of resolving any disputes which arise
among the parties in the course of implementing the judgment to be
entered pursuant to this stipulation, or for extending the time

//

within which any act may or must be performed under this Stipulation, the Court shall retain jurisdiction over this matter for a period of two(2) years from entry of judgment, or for such longer time as may be shown to be necessary on a duly-noticed motion by any party.

13. Entry of judgment pursuant to this stipulation shall constitute a final settlement of all claims which named plaintiffs and plaintiff class members have or may have against the United States and its officers and employees arising out of the implementation of the California Rancheria Act at the seventeen Rancherias listed in paragraph 1.

14. Except as hereafter specifically provided in paragraphs 15-19 the claims asserted in this action by or on behalf of any persons who received any of the assets of the Graton, Scotts Valley, Guideville, Strawberry Valley, Cache Creek, Ruckenta, Ruffeys, Mark West, Wilton, El Dorado, Chico or Mission Creek Rancherias are dismissed without prejudice to their being refiled in another action and defendants shall not assert any laches defense to any such subsequent action they could not have asserted prior to the date this action was filed.

15. The claims of Ethel Whiterock, Minerva Pike, Jesse Elliott, Nora Cooper and Irene Young who received assets from the termination of the Guideville Rancheria under the California Rancheria Act shall be dismissed on grounds of res judicata based on the stipulation and judgment entered in _Whiterock et al. v. Udall_, Fed. Dist. Ct. N.D. Cal. No. 50584 SAW.

16. The claims of all the named and unnamed class members represented in _Taylor et al. v. Rickeh_, C-76-719 SAW (N.D. Cal.)

//

from the Auburn Rancheria shall be dismissed on grounds of res

2   judicata.

3       17.  The claims asserted in this action against the United

4   States on behalf of Frank Truvido and Gloria Truvido of Greton

5   Rancheria who were parties to Frank Truvido and Gloria Truvido

6   v. Morton, C-72-151 GBH (N.D. Cal.), shall be dismissed on grounds

7   of res judicata.

8       18.  The claims asserted in this action on behalf of Teresa

9   Poggs of the Scotts Valley Rancheria who was a party to Teresa Poggs

10   and Ocanie Jay v. Rogers C.B. Morton, C-71-1714 SAW (N.D. Cal.),

11   shall be dismissed on the grounds of res judicata.

12       19.  The claims asserted in this action by any person who

   received any of the assets of the Robinson or Table Bluff Rancherias

   pursuant to the California Rancheria Act shall be dismissed from the

15   action since prior to filing of this action those persons had filed

16   independent actions in Duncan, et al., v. Andrus, Fed. Dist. Ct.,

17   N.D. Cal. No's C-71-1572 WWS, C-71-1713 WWS and Duncan et al., v.

18   U.S., (Ct. Cls.) No 19-75 and Table Bluff Band et al., v. Andrus,

19   No. C-75-2025 WWS, which actions and still pending.

20

21   Dated: _____

22

23

24

25   Dated: _____

26

27   IT IS SO ORDERED

28   SPENCER WILLIAMS

UNITED STATES DISTRICT _____
CALIFORNIA INDIAN LEGAL SERVIC

By: _____
DAVID J. RAPPORT
Attorneys for Plaintiffs

JOSEPH P. RUSSONIELLO
United States Attorney

By: _____
PAUL E. LOCKE
Assistant United States Atto
Attorneys for Federal Defend

## RANCHERIA DESCRIPTIONS

## BIG VALLEY

The Big Valley Rancheria, 118.45 acres, is located on the south shore of Clear Lake near Finley in Lake County, California.

Tract 1: SE1/4NW1/4, NE1/4SW1/4 and Lot 3 (being the fractional NE1/4NW1/4), Section 32, T. 14 N., R. 9 W., Mount Diablo Meridian, California.

Tract 2: That portion of the SE1/4SW1/4 Section 29 and NE1/4NW1/4 Section 32, T. 14 N., R. 9 W., Mount Diablo Meridian, which is north of the United States Meander Line for Clear Lake and which is above the low water line of Clear Lake, subject to a flowage easement.

## BLUE LAKE

The Blue Lake Rancheria, 20.92 acres, is located adjacent to the city of Blue Lake, Humboldt County, California.

A tract of land situate in a portion of the SE1/4SW1/4 Section 19 and in a portion of the NE1/4NW1/4 Section 30, T. 6 N., R. 2 E., Humboldt Meridian and more particularly described in a Warranty Deed recorded in Volume 107 of Deeds, page 224 in the records of Humboldt County, California.

## BUENA VISTA

The Buena Vista Rancheria, 67.5 acres, is located in Amador County, California.

Commencing at the NE corner of Section 19, T. 5 N., R. 10 E., Mount Diablo Meridian, California, thence running west along section line 578 feet, thence at right angles south 5280 feet, thence at right angles east 578 feet, thence at right angles north 5280 feet to place of beginning.

## CHICKEN RANCH

The Chicken Ranch Rancheria, 40 acres, is located in Tuolumne County, California.

E1/2E1/2NE1/4 Section 20, T. 1 N., R. 14 E., Mount Diablo Meridian, California

## CLOVERDALE

The Cloverdale Rancheria, 27.50 acres, is located adjacent to and south of the town of Cloverdale, Sonoma County, California

All those certain lots, pieces or parcels of land, situate, lying and being in the Township of Cloverdale, County of Sonoma, State of California, and bounded and particularly described as follows, to wit:  Beginning at a point in the center of the main public road leading from Cloverdale to Healdsburg and at the northwesterly corner of the land formerly owned by Louis Bee, which is an iron pipe two (2) inches in diameter, two (2) feet long, driven below the surface of the ground, from which a fir tree five (5) feet in diameter marked "R.M.", and known as station 8 on the Muscalecon Grant line bears south 47° W., 59.58 chains distant; thence N. 47° 40' E., along the northerly line of the land formerly owned by Louis Bee, 49.25 chains; thence north 59° 15' W., 6.071/2 chains to the southerly line of the land of Helena M. Woolsey, thence S. 47° 28' W., along the southerly line of the land of Helena M. Woolsey, 46.68 chains to the center line of the hereinbefore mentioned public road; thence S. 54° 15' E., along the center line of said road 5.71 chains to the place of beginning, containing 27.50 acres. (Note – above area included Northwestern Pacific Railroad right of way.)

## ELK VALLEY

The Elk Valley Rancheria, 100 acres, is located near the town of Crescent City, Del Norte County, California.

SE1/4SE1/4, S1/2SE1/4NE1/4SE1/4 Section 22; SW1/4SW1/4, S1/2SW1/2NW1/4SW1/4 Section 23, T. 16 N., R. 1 W., Humboldt Meridian, California.

## GREENVILLE

The Greenville Rancheria, 275 acres, is located approximately three miles east of Greenville, Plumas County, California.

Parcel 1: N1/2 Lot 4, Section 5; N1/2 Lot 1, Section 6. T. 26 N., R. 10 E., Mount Diablo Meridian, California.

Parcel 1A: SE1/4 Section 31, T. 17 N., R. 10 E., Mount Diablo Meridian, California.

Parcel 2: Beginning at the S.E. corner of Plumas County Swamp and Overflowed Land Survey No. 37, N. 31 1/4° E., 3.72 chains from the 1/4 Section corner on the South line of Section 6, T. 26 N., R. 10 E., M.D.M., and running thence N.

72 1/2 W., 15.50 chains; thence N. 4 E., 42.00 chains, thence E. 7.06 chains, thence N. 14.03 chains; thence E. 7.97 chains to the North and South centerline of said Section 6; thence S. 23.85 chains to the center of said Section 6; thence E. 5.00 chains; thence S. 4 1/2 W., 36.88 chains to the place of beginning, containing 75 acres

## MOORETOWN

The Mooretown Rancheria, 160 acres, is comprised of two parcels, one-half mile apart. It is located in Butte County, California.

Parcel 1: N1/2NE1/4 Section 22 T. 20 N., R. 6 E., Mount Diablo Meridian, California.

Parcel 2: N/1/2NE1/4 Section 22, T. 20 N., R. 6 E., Mount Diablo Meridian, California.

## NORTH FORK

The North Fork Rancheria, 80 acres, is located about two miles from the town of North Fork, Madera County, California.

SE1/4NE1/4 Section 20, and SW1/4NW1/4 Section 21, T. 8 S., R. 22 E., Mount Diablo Meridian.

## PICAYUNE

The Picayune Rancheria, 80 acres, is located three miles south of Coarsegold in Madera County, California.

N1/2NE1/4 Section 29, T. 8 S., R. 21 E., Mount Diablo, Meridian.

## PINOLEVILLE

The Pinoleville Rancheria, 99.53 acres, is located in Mendocino County, California.

Tract 1: A portion of Lot 142 of Healey's Survey and Map of the Yokayo Rancho containing 3 acres and more particularly described in deed filed in Book 123 of Deeds, page 148, Recorder's Office, County of Mendocino.

Tract 2: A portion of Lots 141 and 142 of the Yokayo Rancho containing 96.53 acres and more particularly described in deed filed in Book 133 of Deeds, page 283, Recorder's Office, County of Mendocino.

## POTTER VALLEY

The Potter Valley Rancheria, 96 acres, is located near the town of Potter Valley, Mendocino County, California.

Tract 1: A metes and bounds description in Section 19, T. 17 N., R. 31 W., Mount Diablo Meridian and more particularly described in deed recorded in Book 116 of Deeds, Page 197, Mendocino County, containing 16 acres.

Tract 2: NW1/4SE1/4, SE1/4NW1/4 Section 35, T. 18 N., R. 12 W., Mount Diablo Meridian, containing 80 acres.

## QUARTZ VALLEY

The Quartz Valley Indian Reservation, 604 acres, is located in Siskiyou County, California.

Tract 1: NW1/4, W1/2SW1/4 Section 2, T. 43 N., R. 10 W., E1/2SE1/4 Section 3 and a fractional portion of the NE1/4NE1/4 Section 3, T. 43 N., R. 10 W., Mount Diablo Meridian, containing 364 acres.

Tract 2: E1/2SE1/4 Section 34 and SW1/4 Section 35, T. 44 N., R. 10 W., Mount Diablo Meridian, containing 240 acres.

## REDDING

The Redding Rancheria, 30.89 acres, is located south of Redding in Shasta County, California

Tract No. 8 of the Anderson Valley Farms, situate, lying and being on the Rancho Buena Ventura or Reading Grant, in the County of Shasta, State of California.

## REDWOOD VALLEY

The Redwood Valley Rancheria, 80 acres, is located north of the town of Redwood Valley, Mendocino County, California.

NE1/4SW1/4, fractional part of SE1/4NW1/4 Section 32, T. 17 N., R. 12 W., Mount Diablo Meridian and fractional part of Lot 131 of Healey's Survey and Map of Yokayo Rancho.

## ROHNERVILLE

The Rohnerville Rancheria, 15.22 acres, is located near Fortuna, Humboldt County, California, and overlooks the village of Rohnerville.

Tract 1: A parcel of land situate in the ..../2SE1/4 Section 1, T. 2 N., R. 1 W., Humboldt Meridian containing 15 acres and more particularly described in a deed recorded in Volume 116 of Deeds, page 93 in the records of Humboldt County, California.

Tract 2: Commencing at the NW corner of the above tract and running thence N. 37 20' W. 215.5 feet; thence S. 10.6 feet; thence W. 40 feet; thence N. 60 feet; thence E. 40 feet; thence S. 37 20' E. 277 feet; thence S. 89 W. 57.5 feet to place of beginning, containing 0.22 acres, together with a spring.

## SMITH RIVER

The Smith River Rancheria, 163.96 acres, and an unsurveyed island known as Prince Island, 14.25 acres, are located in Del Norte County, California.

Tract 1: Frac. W1/2, W1/2NW1/4NW1/4, NW1/4NW1/4 Section 17, T. 18 N., R. 1 W., Humboldt Meridian, California, containing 163.96 acres.

Tract 2: Unsurveyed island in the Pacific Ocean about 3/4 mile north of Smith River in Section 17, T. 18 N., R. 1 W., Humboldt Meridian, designated on the official plat of survey as Hunters Rock and on the U.S.C. & G. Chart No. 5900 as Prince Island. 14.25 acres.

## DECLARATION OF SERVICE BY MAIL

I, the undersigned, declare:

I am a citizen of the United States, over the age of eighteen years, with my business address at 200 West Henry Street, Ukiah, California 95482, employed in the County of Mendocino and am not a party to the within action.

On the 20th day of _July, 1983_ , I served the within: _Stipulation For Entry Of Judgment_

on _Defendants_ in said action, by placing a true copy thereof enclosed in a sealed envelope with the correct postage thereon fully prepaid in the United States post office mail box at Ukiah, California, addressed as follows:

Paul E. Locke
Asst. U.S. Attorney
P.O. Box 36055
450 Golden Gate Ave.
San Francisco, CA 94102

Robert L. Pridges
Deputy County Counsel
255 N. Forbes Street
Lakeport, CA 95453

John C. Drummond
County Counsel
County of Mendocino
Courthouse, Rm. 304 -
Ukiah, CA 95482

I declare under penalty of perjury that the foregoing is true and correct

Executed on _July 20, 1983_ at Ukiah, California.

LISA ELGIN

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WILSON, CERTEES

U.S. DISTRICT COURT
NO DIST OF CA

WILLIE HARDWICK, et al.,          )
                                  )
                Plaintiffs,       )          C 79-1710SW
                                  )
        v.                        )          ORDER APPROVING ENTRY OF
                                  )          FINAL JUDGMENT IN ACTION
UNITED STATES OF AMERICA, et al., )
                                  )
                Defendants        )
_____)

## ORDER

Upon review of the stipulation of parties for entry of judgment in the underlying action, as well as the Findings and Recommendations of Magistrate Joan Brennan based upon a public hearing on the proposed settlement on December 15, 1983, IT IS HEREBY ORDERED that judgment be entered for PLAINTIFFS, according to the terms of the stipulation filed by the parties on August 2, 1983.

IT IS SO ORDERED.

DATED:                              _____
                                    UNITED STATES DISTRICT JUDGE

EXH. A PG. 15 OF 15 PGS.

RECEIVED

JUN 1 1987   RECEIVED

1  DAVID J. RAPPORT
   CALIFORNIA INDIAN LEGAL SERVICES
2  P.O. Box 488
   Ukiah, California 95482          ORIGINAL          MAY 28 1987
3  Telephone: (707) 462-3825        FILED

4  Attorneys for Plaintiffs         JUN 16 1987

5  MICHAEL D. OTT                   CLERK, U.S. DISTRICT COURT
   Madera County Counsel            NORTHERN DISTRICT OF CALIFORNIA
6  Government Center                SAN JOSE
   209 W. Yosemite Avenue
7  Madera, California 93637
   Telephone:

8  Attorneys for Madera County Defendants

9

10              UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12

13  TILLIE HARDWICK, et al.        )   NO. C-79-1710 SW
                                   )
14              Plaintiffs,        )   STIPULATION FOR ENTRY OF
                                   )   JUDGMENT (MADERA COUNTY)
15  v.                             )
                                   )
16  UNITED STATES OF AMERICA,      )
17  et al.,                        )
                                   )
18              Defendants.        )
    _____    )

19

20          Plaintiffs on their own behalf and on behalf of class

21  members from the North Fork and Picayune Rancherias and defen-

22  dants W A. Neufeld, the Tax Collector for Madera County, Richard

23  Gordon, the Assessor for Madera County, and the Board of Supervi-

24  sors of Madera County, subject to approval of the Court agree as

25  follows:

26          1.   DEFINITIONS - The following definitions shall

27  govern the construction of the stipulation.

28          A.   "PLAINTIFFS" means all Plaintiffs in the

    STIP FOR ENTRY OF JUDGMENT        -1-

EXHIBIT B

above-captioned case, the North Fork and Picayune Rancherias, and all those class members from the North Fork and Picayune Rancherias.

B. "DEFENDANTS" - means W.A. Nevield/Tax Collector for Madera County, Richard Gordon/Assessor for Madera County and the Board of Supervisors of Madera County, and their successors in office.

C. "NORTH FORK AND PICAYUNE RANCHERIAS" - means all lands within the exterior boundaries of the North Fork and Picayune Rancherias as described in paragraph 25.1).

D. "RANCHERIA PARCELS" - means all parcels of real property within the boundaries of the North Fork and Picayune Rancherias which were distributed or sold by the United States of America pursuant to the Plan for the Distribution of the Assets of the North Fork and Picayune Rancherias, approved by the Secretary of the Interior under the authority of the California Rancheria Act.

E. "INDIAN PARCELS" - means all those parcels of real property or interests in said parcels within the boundaries of the North Fork and Picayune Rancherias currently owned by Indians entitled to return said parcels or interests thereof to the United States of America in accordance with the Judgment of the United States District Court, Northern District of California, in the above-entitled case.

F. "THE_PARTIES" - means the Plaintiffs and Defendants as defined above.

G. "INDIAN_COUNTRY" - means "Indian Country" as defined by 18 USC §1151

STIP FOR ENTRY OF JUDGMENT       -2-

H. "ELECTION_TO_RETURN_TO_TRUST STATUS" - means the filing of a deed in the Madera County Recorder's Office which has been duly accepted by the United States of America which returns Indian Parcels to trust status with the United States of America.

I. "INDIANS" - means any Indian who owns any interest in a North Fork or Picayune Rancheria parcel.

J. "COUNTY_MAINTAINED_ROAD" - means those roads which are listed as part of the Madera County maintained road system, including roadside easements, located on the North Fork and Picayune Rancherias that were conveyed to Madera County as part of the termination of the Rancheria, if any.

K. "UNPAID_PROPERTY_TAXES" - means real property taxes due on Indian parcels.

L. "ASSESSMENT" - means an exaction of money imposed on the owner of real property located within the county the payment of which is secured by a lien on the property, including, but not limited to, benefit assessments, assessments imposed under the authority of the Improvement Acts of 1911 and 1913 and the Special Assessment, Investigation, Limitation and Majority Protest Act of 1931, the Revenue Bond Law of 1941, or any similar law.

2. The Parties, subject to approval of the Court pursuant to Federal Rules of Civil Procedure 23(e), stipulate that the Court may enter judgment as follows:

A. The Court shall certify a sub-class consisting of all members of the class previously certified herein from the North Fork and Picayune Rancherias in Madera County.

B. The Court shall declare that:

STIP FOR ENTRY OF JUDGMENT          - 3 -

1      1)  The North Fork and Picayune Rancherias are de-
2  scribed as shown on Exhibit A to the Stipulation for Entry of
3  Judgment, filed herein on August 2, 1983, and made the judgment
4  of this Court on December 22, 1983, in Order Approving Entry of
5  Final Judgment in action.

6      2)  The North Fork and Picayune Rancherias and the
7  Plaintiffs were never and are not now lawfully terminated under
8  the California Rancheria Act ("Rancheria Act"), of August 18.
9  1958, Pub. L. 85-671, 72 Stat. 69, as amended by the Act of
10  August 11. 1964, 78 Stat. 390; in that the requirements of
11  section 3 of that Act were not fulfilled prior to the conveyance
12  of the deeds to the Rancheria Parcels.

13      3)  As a consequence this Court has authority as a
14  court of equity to remedy the effects of the premature and
15  unlawful termination of the North Fork and Picayune Rancherias
16  and the Plaintiffs to the extent that it can do so without
17  adversely affecting the interests of third party purchasers for
18  value of Rancheria Parcels.

19      C.  The original boundaries of the North Fork and
20  Picayune Rancherias, as described in paragraph 2B.1) are hereby
21  restored. and all land within these restored boundaries of the
22  North Fork and Picayune Rancherias are declared to be "Indian
23  Country".

24      D.  The North Fork and Picayune Rancherias shall be
25  treated by the County of Madera and the United States of America,
26  as any other federally recognized Indian Reservation, and all of
27  the laws of the United States that pertain to federally recog-
28  nized Indian Tribes and Indians shall apply to the North Fork and

Picayune Rancherias and the Plaintiffs.

E.  All real property taxes heretofore paid to the County of Madera by Plaintiffs for the tax year 1979 and any subsequent tax year for Indian Parcels shall be refunded in full to Plaintiffs or the estate of the Plaintiff who paid them. However, no prejudgment interest shall be added to the amounts refunded under this paragraph.  Defendants shall be entitled to keep all real property taxes collected on all property located in the North Fork and Picayune Rancherias except as specifically set forth above.

F.  Defendants shall not accept, collect or recover any Unpaid Property Taxes, fees or assessments on Indian Parcels within the boundaries of the North Fork and Picayune Rancherias as restored; any liens to secure the payment of such taxes, fees or assessments shall be cancelled; and, except as provided in Paragraphs G, defendants shall not have jurisdiction to tax or assess Indian Parcels on said rancherias.

G.  After December 31, 1988, the County of Madera shall have the limited power, authority and/or jurisdiction to levy and collect ad valorem property taxes only on all Indian Parcels for which no election to return to trust status has been made.

H   All County maintained roads within the North Fork and Picayune Rancherias shall be deemed to have been and now are lawfully owned and maintained by the County of Madera.

I.  All claims whatsoever for money damages, other than the tax refunds under Paragraph E, against the Defendants result ing from the distribution of the assets of the North Fork and Picayune Rancherias under the Rancheria Act, which were or could

1    have been made in this action shall be dismissed with prejudice.

2        J.   Each party shall bear their own attorneys' fees and

3    court costs.

4    DATED: 11/11/86                CALIFORNIA INDIAN LEGAL SERVICES

5                                   By: _____
6                                        DAVID J. RAPPORT
                                         Attorneys for Plaintiffs
7

8    DATED: 5/20/87                 MICHAEL D. OTT
                                    Counsel for Madera County
9
                                    By: _____
10                                      MICHAEL D. OTT
                                        Attorneys for Madera County
11                                      Defendants

12

13                                  IT IS SO ORDERED.

14                                  SPENCER WILLIAMS

15                                  _____
                                    SPENCER WILLIAMS
16                                  U.S. DISTRICT JUDGE.

17

18

19

20

21

22

23

24

25

26

27

28

     STIP FOR ENTRY OF JUDGMENT          -6-

RECEIVED JUL ? ? ???

# CONSTITUTION
## of the
# PICAYUNE RESERVATION

### PREAMBLE

We, the Chukchansi people of the Picayune Reservation, in order to form a tribal organization to handle our Tribe's affairs, improve the economic conditions of ourselves and our posterity, promote our common welfare, conserve and develop our land and other resources, encourage educational progress, and secure our powers of self-government, do hereby establish this Constitution.

### ARTICLE I · NAME

The name of this organized body shall be the Picayune Reservation, referred to hereinafter as "The Tribe."

### ARTICLE II · TERRITORY AND JURISDICTION

The jurisdiction of the Tribe shall extend to all lands comprising the Picayune Rancheria, as described in the Stipulation for Entry of Judgment entered in *Hardwick, et al. v. United States, et al.*, N.D. Cal. No. C 79-1710 SW, notwithstanding the issuance of any patent, and to all lands hereafter acquired in any manner by the Tribe.

### ARTICLE III · MEMBERSHIP

#### SECTION 1. *Membership*

(a) The membership of the Tribe shall consist of:

(1) All persons who were listed as distributees or dependent members of distributees in the plan for distribution of the assets of the Picayune Rancheria, as approved by the Secretary of the Interior on June 30, 1960.

(2) All persons of Chukchansi Indian blood who have a special relationship with the Tribe not shared by Indians in general, and who have received allotments of public land under the General Allotment Act of 1887, 25 USC ... [illegible] as listed on any official roll of the Bureau of Indian Affairs.

(3) Persons who are direct lineal descendants of individuals eligible for membership under either subsection (1) or (2), regardless of whether the ancestor through whom eligibility is claimed is living or deceased, providing such descendant is of Chukchansi Indian blood.

(4) All persons of Chukchansi Indian blood who have a special relationship to the Tribe not shared by Indians in general, who have been accepted into membership under Section 2 of this Article.

(b) All applications for membership from any person of Chukchansi Indian blood shall be submitted to the Enrollment Committee, which shall rule on the application pursuant to an Enrollment Ordinance adopted by the Tribal Council.

(c) Nothing in this section shall affect property rights existing prior to ratification of this Constitution of any member of the Tribe.

#### SECTION 2. *Petitions for membership*

(a) At any time within one year of the date of ratification of this Constitution, any person of Chukchansi Indian blood who believes her/himself to be entitled to membership in the Tribe, and who does not fall within the provisions of Sections 1(a)(1), (2) or (3) of this Article, may petition the Tribal Council for admission into membership. The Tribal Council shall review such petition, and determine whether the petitioner has, has had, or is the descendant of a person of Chukchansi Indian blood who had, a special relationship with the Tribe not shared by Indians in general. If the Tribal Council determines that the petitioner is eligible for membership under this provision, the petitioner shall be accepted as a tribal member with all rights and responsibilities of membership, and her/his name shall be added to the Base Membership Roll.

(b) The Tribal Council may, in its discretion, extend the time for petitions under this section for up to one additional year.

#### SECTION 3. *Dual Enrollment*

No person shall be enrolled as a member of the Tribe if she/he is recognized as a member of any other Tribe, band, or Indian community.

**Exhibit C**

### SECTION 4.  Base Membership Roll

The Base Membership Roll (the Roll) shall be prepared in accordance with an ordinance adopted by the Tribal Council.  Such ordinance shall contain provisions for establishment of an Enrollment Committee, enrollment procedures, including application forms, approval or disapproval of applications, rejection notices, and appeals procedures, for corrections to the Roll, and for keeping the Roll current.

## ARTICLE IV - GOVERNING BODY

### SECTION 1.  General Council

The General Council shall consist of all enrolled members of the Tribe, 18 years of age or older.  The General Council shall exercise those powers delegated to it by this Constitution.

### SECTION 2.  Tribal Council.

The Governing Body of the Tribe shall be known as the Tribal Council.  The General Council shall elect from its own members by secret ballot a Tribal Council consisting of seven members.

## ARTICLE V - POWERS OF THE GOVERNING BODY

The Tribal Council shall have the following powers:

(a) to promulgate and enforce bylaws and ordinances necessary to carry out its powers under this Constitution;

(b) to promulgate and enforce ordinances governing the conduct of the members of the Tribe, and non-members within the Tribe's jurisdiction;

(c) to safeguard the peace, safety, morals, and general welfare of the Tribe;

(d) to confer with the Secretary of the Interior or his representative and make recommendations regarding the uses and disposition of tribal property;

(e) to prevent the sale, disposition, lease or encumbrance of tribal lands, interest in lands, or other community assets of the Tribe, *provided* that no tribal lands shall ever be sold or encumbered except for tribal purposes, or leased for a period exceeding five years, except that leases for mining purposes may be made for such longer periods as may be authorized by the Tribal Council;

(f) to purchase in the name of the Tribe any land or other property the Tribal Council may deem beneficial to the Tribe;

(g) to acquire under condemnation proceedings in courts of competent jurisdiction land or other property;

(h) to administer and regulate the use and disposition of all Tribal property;

(i) to borrow money from any governmental agency and to pledge or assign future Tribal income as security for such loans;

(j) to manage tribal funds in accordance with approved resolutions;

(k) to collect and expend any tribal funds within the exclusive control of the Tribe, and to recommend the expenditure of any other tribal funds;

(l) to regulate the conduct of business activities within the exterior boundaries of the Picayune Reservation;

(m) to manage all economic affairs and enterprises of the Tribe;

(n) to promulgate and enforce ordinances providing for taxes, assessments, and license fees upon all persons doing business within the exterior boundaries of the Picayune Reservation, and to grant special rights or privileges to, and otherwise regulate the conduct of business activities within the Picayune Reservation;

(o) to apportion available tribal funds for public purposes;

(p) to administer any funds within the control of the Tribe and to make expenditures of available funds for tribal purposes in accordance with a budget approved by the Tribal Council, *provided* that all expenditures of the tribal funds under the control of the Tribal Council shall be made only by resolution, duly approved at regular or special meetings of the Tribal Council, and that the amount so expended shall be a matter of record;

(q) to charter subordinate organizations for economic purposes and to regulate the activities of all cooperative associations of members of the Tribe by ordinance;

(r) to waive the Tribe's sovereign immunity from unconsented suit, *provided* that any such waiver must be approved by a two-thirds majority of all members of the Tribal Council;

(s) to appoint necessary committees;

(t) to delegate to subordinate boards, or cooperative associations any of the powers enumerated herein, reserving the right to review any action taken by virtue of such delegated powers;

(u) to provide for the protection and preservation of tribal property, wildlife, and natural resources;

(v) to cultivate and preserve native Chukchansi arts, crafts, language, culture, and Indian ceremonies;

(w) to provide for the establishment of Tribal Courts for all purposes allowed by law, including exercising the Tribe's jurisdiction and protecting the rights and interests of the Tribe's members under the Indian Child Welfare Act, 25 U.S.C. §1901;

(x) to exercise such further powers, consistent with this Constitution, as needed to carry out the powers listed herein.

## ARTICLE VI – MEETINGS

### SECTION 1. Tribal Council Meetings

Regular meetings of the Tribal Council shall be held on the fourth Monday of each month in a place designated by the Tribal Council. Special meetings of the Tribal Council may be called by the Chairperson and shall be called by her/him upon receipt of a petition signed by at least three Tribal Council members, and when so called, the Tribal Council shall have the power to transact business as in regular meetings provided that a quorum is present. Council members shall be notified at least three days in advance of all special meetings.

### SECTION 2. Quorum

A quorum of the Tribal Council shall consist of four members of the Tribal Council. No business shall be transacted unless a quorum is present.

### SECTION 3. General Council Meetings

Regular meetings of the General Council shall be held quarterly. The date, time, and place shall be determined by the Tribal Council. Special meetings of the General Council may be called by the Chairperson of the Tribal Council upon receipt of a petition signed by at least 51% of the members of the General Council.

### SECTION 4. Quorum - General Council

A quorum of the General Council shall consist of 35% of the General Council. Once a quorum of the General Council has been established, a quorum shall consist of those present who may then conduct all business. If a quorum is not established, the Chairperson may then move to reschedule or adjourn the meeting.

## ARTICLE VII – ELECTIONS

### SECTION 1. Members of the Tribal Council

Members of the Tribal Council shall be elected pursuant to an appropriate election ordinance, and shall serve until their successors are duly installed.

### SECTION 2. Voter Qualification

All enrolled members of the Picayune Reservation, who are 18 years of age or older are qualified voters.

### SECTION 3. Qualification of Candidates

Candidates for membership on the Tribal Council shall be qualified voters and shall reside within a 75 mile radius of the Picayune Reservation.

### SECTION 4. First Election

(a) The officers of the Tribal Council elected under the Constitution of the Picayune Reservation, approved March 31, 1987 ( hereinafter "the provisional Tribal Council"), sitting at the time of ratification of this Constitution, shall hold office until their successors are duly elected and seated. The first regular election of officials under this Constitution shall be held on within 90 days after ratification of this Constitution.

(b) At the first election held under this Constitution, the four candidates receiving the highest total of votes shall hold office for a period of two years. The first Chairperson, Secretary and Treasurer of the Tribal Council shall be elected from these four nominees. The three candidates receiving the next highest total of votes shall be elected for a term of one year. The Vice Chairperson of the Tribal Council shall be elected from these three members. Thereafter, all terms of office shall be for two years.

(c) The date of the annual elections shall be determined by the Tribal Council. Tribal Council members shall hold office until their successors are duly elected and installed.

### SECTION 5. Nominations

The time, place, and manner of nominations shall be specified in the election ordinance adopted pursuant to Section 6 of this Article.

### SECTION 6. Election Ordinances

a) The Tribal Council shall adopt an Election Ordinance following the effective date of this Constitution. Such ordinance shall include but not be limited to the following provisions: secret balloting, nomination of candidates, absentee balloting, and procedures for resolving election disputes.

b) The Election Ordinance shall also include provisions regarding the conduct of recall and referendum elections, and a uniform procedure for submitting petitions. Elections to amend this Constitution shall be conducted in accordance with Article XII of the Constitution. The governing body is to conduct elections in accordance with the Election Ordinance.

### SECTION 7. Settlement of Election Disputes

All election disputes, including the determination of the qualifications of any voter or any candidate, if questioned, will be resolved by an Election Committee established under the Election Ordinance.

## ARTICLE VIII - OFFICERS

### Section 1. Election

The Tribal Council shall elect from its membership a Chairperson, a Vice Chairperson, a Secretary and a Treasurer.

### Section 2. Duties of Officers

The duties of the officers of the Tribal Council shall be enumerated in bylaws adopted by the Tribal Council at its first regular meeting after taking office.

### Section 3. Qualifications

Officers of the Tribal Council shall:

(a) be 25 years of age or older;

(b) reside within a 75 mile radius of the Reservation.

(c) have attended at least eight Tribal Council meetings within the past year and have demonstrated an active involvement in ChuPu band affairs.

## ARTICLE IX - VACANCIES

Any office which has been vacated, whether by removal, recall, or forfeiture, shall be filled by appointment of the Tribal Council at its next meeting and such replacement shall serve the unexpired term of office.

## ARTICLE X - REMOVAL, RECALL, FORFEITURE

### SECTION 1. Removal

The Tribal Council may, by a majority vote, remove any member of the Tribal Council for neglect of duty or gross misconduct. Any Tribal Council member subject to removal shall be given due notice and an opportunity to be heard, and shall receive a written statement of charges against her/him at least 20 days before the meeting at which the removal will be voted upon.

### SECTION 2. Recall

Within 10 days of receipt of a petition signed by at least 24% of the qualified voters demanding the recall of any member(s) of the Tribal Council, the Tribal Chairperson shall call a special election on the question of the recall. The special election shall be held within 30 days from the date of the publication of the notice of the election. The election shall be held in the manner prescribed in the Tribe's Election Ordinance in accordance with Article VII, Section 6 of this Constitution. The decision of a majority of the voters voting in the recall election shall be final, provided that at least 20% of the qualified voters voted in the election.

### SECTION 3. Forfeiture

Any member of the Tribal Council, or other tribal official who, during the term for which she/he is elected or appointed, is convicted of a felony in any federal or State court shall automatically forfeit her/his office effective on the date of her/his initial conviction in court. Any official found guilty by the Tribal Council of behavior involving misconduct reflecting on the dignity and integrity of the Tribal Council, malfeasance in office, or gross neglect of duty shall be removed from office by a majority vote of the Tribal Council, in accord with Section 1 of this Article. Any member who shall absent himself from three successive meetings without being excused for cause, shall forfeit all rights of his office.

## ARTICLE XI - REFERENDUM

Upon presentation to the Tribal Council of a petition, signed by 10% of the qualified voters, the Tribal Council shall either: (1) adopt the provision(s) of the petition by ordinance, resolution or other appropriate action; or (2) call an election at which the issue(s) presented by the petition may be voted on within 60 days, by secret ballot. The Tribal Council shall abide by the vote of the majority of the voters in any such election *provided* that at least 51% of the qualified voters have voted.

## ARTICLE XI - BILL OF RIGHTS

### SECTION 1.

All members of the Tribe shall enjoy without hindrance, freedom of worship, conscience, speech, press, assembly and association.

### SECTION 2.

The Constitution shall not in any way alter, abridge or otherwise jeopardize the rights and privileges of the members of the Tribe as citizens of the State of California or the United States.

### SECTION 3.

Individual property rights of any member of the Tribe, vested prior to the adoption of this Constitution, shall not be altered, abridged or otherwise affected by the provisions of this Constitution.

### SECTION 4

Tribal members shall have the right to review all tribal records, including financial records, at any reasonable time in accordance with procedures established by the Tribal Council.

### SECTION 5.

The Tribe, in exercising its powers of self-government, shall not:

(a) make or enforce any law prohibiting the full exercise of religion, or abridging the freedom of speech or of the press, or the right of the people peaceably to assemble and to petition for a redress of grievances;

(b) violate the right of the people to be secure in their persons, houses, papers, and effects against unreasonable search and seizure, nor issue warrants, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized;

(c) subject any person for the same offense to be twice put in jeopardy;

(d) compel any person in any criminal case to be a witness against himself;

(e) take any private property for a public use without just compensation;

(f) deny to any person in a criminal proceeding the right to speedy trial, to be informed of the nature and cause of the accusation, to be confronted with their witnesses in favor, and, at his own expense to have the assistance of counsel for his defense;

(g) require excessive bail, impose excessive fines, inflict cruel and unusual punishments, and in no event impose for conviction of any one offense any penalty or punishment greater than imprisonment for a term of 6 months or a fine of $500 or both;

(h) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law;

(i) pass any bill of attainder or ex post facto law;

(j) deny to any person threatened with imprisonment the right, upon request, to a trial by jury of not less than 6 persons.

## ARTICLE XII - AMENDMENTS

This Constitution may be amended by a majority vote of the qualified voters of the Tribe, voting at an election called for that purpose, *provided* that at least 30% of those entitled to vote shall vote in such election. It shall be the duty of the Tribal Council to call an election on a proposed amendment upon presentation of a petition signed by 30% of the eligible voters. No election to amend this Constitution may be called except as provided herein.

## ARTICLE XIII - SEVERABILITY

If any provision of this constitution shall in the future be declared invalid by a court of competent jurisdiction, the invalid provision or provisions shall be severed and the remaining provisions shall continue in full force and effect.

## ARTICLE XIV - RATIFICATION

This Constitution shall be effective when ratified by a majority of the voters eligible to vote thereon, as determined by the provisional Tribal Council described in Article VII, Section 4, in a special election called by the provisional Tribal Council for that purpose.



Picayune Rancheria
of the

# CHUKCHANSI INDIANS

46575 Road 417 · Coarsegold, CA 93614 · (559) 658-6333 · FAX (559) 658-1690

## RESOLUTION
## NO. 2001-11

### A Resolution Creating the Chukchansi Economic Development Authority

WHEREAS, the Picayune Rancheria of the Chukchansi Indians (the "Tribe") is a sovereign federally recognized tribe as established pursuant to the Constitution of the Picayune Reservation, and

WHEREAS, the Tribal Council of the Picayune Rancheria of the Chukchansi Indians is the governing body of the Tribe pursuant to Article IV, Section 2 of the Tribal Constitution; and

WHEREAS, the Tribal Council is empowered by the Tribal Constitution to promulgate and enforce ordinances, and to exercise the powers set forth in Section 5 of the attached Ordinance and to delegate its powers to subordinate boards; and

WHEREAS, the Tribal Council has determined that it is in the best interest of the members of the Tribe for the Tribe to conduct Class II and Class III Gaming on the Tribe's Indian Lands (as such term is defined at Section 2703(4) of the Indian Gaming Regulatory Act, 25 U.S.C. Section 2701 et seq), and

WHEREAS, pursuant to Section 2710 of the Indian Gaming Regulatory Act, the Tribe has entered into a Tribal-State Compact with the State of California (the "Compact"), and

WHEREAS, the Compact provides that the Tribe or an authorized official or agency thereof may engage in the Gaming Activities permitted in the Compact, and

WHEREAS, the Tribal Council has, prior to the date of this Resolution, taken various actions and entered into various contractual arrangements, all for the purpose of developing and opening a Tribal Gaming Facility and related businesses (the "Casino Project"), and

WHEREAS, the Tribal Council has determined that it is in the best interest of the Tribe and its members to create a Tribal Economic Development Authority as a body corporate and politic and an instrumentality of the Tribal Government and an authorized agency of the Tribe to develop and own the Casino Project and to manage all assets and revenues relating thereto;

WHEREAS, the Tribal Council has directed its attorneys to prepare a Tribal Ordinance to accomplished the above described goals of the Tribal Council, and



Exhibit D

WHEREAS, the Tribal Council has reviewed the Ordinance Establishing the Chukchansi Economic Development Authority attached hereto (the "Ordinance") and desires to enact the Ordinance for inclusion in the Tribal Law of the Picayune Reservation.

NOW THEREFORE, BE IT RESOLVED, that the Tribal Council hereby creates the Chukchansi Economic Development Authority to exercise such powers and to be governed by a Board of Directors, all as described in the Ordinance attached hereto; and

BE IT FURTHER RESOLVED, that the Tribal Council hereby enacts the Ordinance and incorporates the same into the laws of the Tribe; and

BE IT FURTHER RESOLVED, that the Ordinance is incorporated into this Resolution by reference and made a part hereof as if fully set forth herein.

## CERTIFICATION

This will certify that the foregoing resolution was considered at a meeting of the Tribal Council of the Picayune Rancheria of the Chukchansi Indians, duly called on the 15th day of June, 2004 and was adopted by a vote of __4__ for, __0__ against, and __0__ abstentions. A quorum of __4__ was present.

Dated this 15th day of June, 2004

_____
Dixie Jackson, Chairperson
Picayune Rancheria of the Chukchansi Indians

ATTEST:

_____
Belinda Jones, Secretary
Picayune Rancheria of the Chukchansi Indians

RECEIVED,


_____
Superintendent
BUREAU OF INDIAN AFFAIRS



Ordinance Dated June 15, 2001

## Ordinance of the Picayune Rancheria
### Establishing and Governing
### the
## CHUKCHANSI ECONOMIC DEVELOPMENT AUTHORITY

**Section 1.** **Title.** This Ordinance shall be known as the Chukchansi Economic Development Authority Ordinance. It is promulgated by the Tribal Council pursuant to Article V, Sections (r), (t), (l), (m), (p), (q), and (t) of the Constitution of the Picayune Reservation and Resolution No. 2001-11 of the Tribal Council.

**Section 2.** **Purpose.** The Chukchansi Economic Development Authority (the "Authority") is created by the Tribal Council to act on behalf of the Tribe through the exercise of the delegated powers of the Tribal Council hereinafter enumerated, for the following purposes: (i) to further the economic prosperity of the Tribe; (ii) to own the Facility and the Enterprise and to manage the assets thereof and all other assets of the Authority; (iii) to be a party or assignee to the Financing and Project Documents; and (iv) to ensure Authority and Tribal compliance with all obligations, terms and conditions thereof.

**Section 3.** **Definitions.** For the purpose of this Ordinance, the capitalized terms set forth below shall have the following meanings:

"Enterprise" means the Class II and Class III Gaming, Business, and all related businesses operated on the Indian Lands (as defined in IGRA) of the Tribe pursuant to the Compact and other Legal Requirements.

"Facility" means the buildings, structures, appurtenances, fixtures and improvements housing, supporting and relating to the Enterprise and located on the Indian Lands (as defined in IGRA) of the Tribe.

"Financing and Project Documents" means collectively, those documents by which the Facility is financed, developed and maintained, and by which the Enterprise is financed and managed.

"Legal Requirements" means the requirements set forth in the Indian Gaming Regulatory Act of 1988, 25 U.S.C. Section 2701 et seq. ("IGRA"), the Tribal-State Compact between the State of California and the Tribe (the "Compact"), the Tribal Gaming Ordinance of the Tribe (the "Gaming Ordinance") including all current and future amendments to any of the above, and all present and future permits, licenses and certificates relating thereto, and any and all present and future federal, state, local and tribal laws, codes, rules and regulations, in any way applicable to the Tribe, the Authority, the Facility or the Enterprise.

1

Tribal Council - means the duly elected governing body of the Tribe pursuant to the Tribal Constitution.

## Section 4   Creation of Authority

(a)    There is hereby created the Chukchansi Economic Development Authority.

(b)    The Chukchansi Economic Development Authority is and shall be considered a body corporate and politic and instrumentality of the Picayune Rancheria of Chukchansi Indians (the "Tribe") and shall be deemed an authorized agency of the Tribe within the meaning set forth in Section 2.21 of the Compact.

(c)    The Authority shall be governed by a seven member board who shall serve as the Board of Directors of the Authority.  The Board of Directors shall be made up of those members of the Tribe who are sitting members of the Tribal Council.

(d)    The members of the Board of Directors shall serve for terms equal to that of their respective terms on the Tribal Council.  A member of the Board of Directors' term shall commence upon the date that the individual is sworn in on the Tribal Council and that term shall expire on the date that the individual leaves his/her position on the Tribal Council.

(e)    The Chairperson of the Tribal Council shall serve as Chairperson of the Board of Directors.  All other elected positions of the Tribal Council shall act in the same capacity on the Board of Directors of the Authority as they hold on the Tribal Council.  The powers, duties and responsibilities of each officer of the Board of Directors shall be set forth in the Bylaws to be enacted by Resolution of the Board following the date of this Ordinance.

**Section 5   Powers of Authority.**  The Authority, acting through its Board of Directors, shall have the following powers, delegated by the Tribal Council, which powers shall be limited in accordance with Section 6 below.

(a)  To take such action, not inconsistent with this Ordinance, as it deems necessary and appropriate to promote the economic development and general welfare of the Tribe and its members.

(b)  To own and operate the Facility and the Enterprise on behalf of the Tribe;

(c)  To adopt resolutions not inconsistent with this Ordinance and enforce the same;

5

(d) To hold, purchase and convey real and personal property;

(e) When necessary to the transaction of its business, to borrow money, to issue promissory notes and other evidences of indebtedness and to secure the same by pledging the assets of the Authority;

(f) To purchase, hold, sell, exchange, lease, assign, pledge, transfer or deal in bonds, notes, shares, securities or other investments;

(g) To acquire the assets, revenues, accounts, property and other interests of the Authority;

(h) To employ or contract for the services of advisors, experts, professionals and laborers, and to enter into any relationship with another person in connection with any lawful activities of the Authority and the Enterprise;

(i) To do any and all things necessary or desirable to secure financing, and development and management expertise for the development, management and operation of the Enterprise, and to enter into contracts for the same; and

(j) To make bylaws and establish policies and procedures not inconsistent with this Ordinance;

(k) In connection with any contractual obligation of the Authority, to waive the Authority's sovereign immunity from suit, to consent to the jurisdiction of any court over the Tribe, or to consent to the levy of any judgment, lien attachment upon any property or income of Authority subject to the provisions of Section 13 of this Ordinance;

(l) In connection with any contractual obligation of the Authority, to stipulate for judgment before the Gaming Disputes Court of the Tribe;

(m) To do everything necessary and proper for the accomplishment of the purposes enumerated in Section 2 above, subject at all times to applicable Legal Requirements.

**Section 6.  Limitations on Powers and Activities.**  So long as any obligations of the Tribe or the Authority remain outstanding under the Financing and Project Documents, the Authority shall limit its activity and interests to ownership of the Facility and the Enterprise, and the ownership and management of the other assets of the Authority. Furthermore, the Authority shall at all times comply with the terms and conditions applicable to the Authority under the Financing and Project Documents, including without limitation the investment and expenditure of Authority Assets (as defined below)

5

**Section 7.  Assets of Authority.**  The property, monies, funds, accounts and other assets of the Authority (collectively, the "Authority Assets") shall be held and maintained solely in the name of the Authority.  Authority Assets shall be held and maintained in segregated accounts separate from those of the Tribe or the Tribal Council and shall not be commingled with the assets of any person or entity.

### Section 8.  Authority Meetings.

    (a)    *Regularly Scheduled Meetings.*  The Authority may hold regular and special meetings at such times and places as it may deem convenient, but at least one regular meeting shall be held monthly.  A majority of the members constitute a quorum for purposes of meetings of the Board of Directors.  Special meetings may be called by the Chairperson and shall be called by the Chairperson at the written request of at least two members of the Board of Directors.  Each member of the Authority may receive a stipend to be determined by the Board of Directors plus expenses in accordance with policies to be developed by the Board of Directors.

    (b)    *Special or Closed Meetings.*  The Authority may hold executive or closed meetings for any of the following purposes:

        1.    Consulting with experts and principals from the Tribe or the Enterprise concerning matters of special and unique necessity;

        2.    Discussing business strategies, marketing and pricing strategies of the Enterprise and its activities;

        3.    Negotiating the terms of any financing arrangement for the benefit of the Authority or the Tribe;

        4.    Discussing personnel issues or other matters that a reasonable individual of average sensibilities would deem a private matter;

        5.    Discussing and consulting on matters of importance with attorneys and accountants;

        6.    Discussing any other matter that the Authority deems confidential and/or proprietary in nature.

**Section 9.  Conflict of Interest.**  During his or her tenure, each member of the Board of Directors has a duty to the Authority and to the Tribe to act in the best interest of the Authority and the Tribe.  With regard to all activities of the Authority, each member of the Board of Directors shall disclose any actual or potential conflict of interest between himself or herself and the purposes and actions of the Authority.  No member shall participate in any vote if the member (based on his or her best judgment or on a vote of

-4-

the remaining members of the Board of Directors) is unable due to such conflict to act in the best interest of the Authority and/or the Tribe.

**Section 10   Audits.** The Authority shall require annual outside audits of all of its business activities. The audits shall be conducted by an independent auditing firm prepared in conformity with the American Institute of Certified Public Accountant's standards.

**Section 11   Records of Authority.** Information and records of the Authority are confidential and may not be disclosed to any person or entity except the Tribal Council and as required by applicable Legal Requirements and the terms of the Financing and Project Documents.

**Section 12.   Sovereign Immunity.** As a body corporate and politic and instrumentality and authorized agency of the Tribe, the Authority shall be clothed by federal and tribal law with all the privileges and immunities of the Tribe, including sovereign immunity from suit in any state, federal, or tribal court. Nothing contained in this Section shall be deemed or construed to be a waiver of sovereign immunity by the Authority from suit which may be waived only in accordance with this Section.

    (a)    Sovereign immunity of the Authority is hereby specifically waived in accordance with the terms of the Project and Financing Documents.

    (b)    The Authority may waive its sovereign immunity when necessary in the best business judgment of the Board of Directors to secure a substantial advantage or benefit for the Authority or the Tribe. Any waiver of sovereign immunity shall be specific and limited as to (i) duration, (ii) the grantee, (iii) the scope of the waiver, (iv) nature and description of the property or funds, if any, of the Authority, available to satisfy any order or judgment (v) a particular court or courts having jurisdiction over the Authority, and (vi) the law that shall be applicable thereto. Any express waiver of sovereign immunity by resolution or contract of the Authority shall not be deemed a waiver of the sovereign immunity of the Tribe.

**Section 13   Indemnification.**

    (a) The Authority may indemnify a member of the Board of Directors who was or is a party or is threatened to be made a party to any threatened, pending, or completed action, suit or proceeding by reason of the fact that he or she is or was a member of the Board of Directors.

    (b) To the extent that a member of the Board of Directors has been successful on the merits or otherwise in defense of any action, suit or proceeding, or in defense of any claim, issue or matter, brought by reason of the fact that he or she is or was a member of the Board of Directors, the Authority shall indemnify him or her

against expenses, including attorneys' fees actually and reasonably incurred by him or her in connection with the defense.

Section 14   Amendments   This Ordinance may be amended only by duly enacted resolution of the Tribal Council.