IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-01596-MSK-KLM

BREAKTHROUGH MANAGEMENT GROUP, INC.,

     Plaintiff,

v.

CHUKCHANSI GOLD CASINO AND RESORT,
THE CHUKCHANSI ECONOMIC DEVELOPMENT AUTHORITY, and
RYAN STANLEY,

     Defendants.

---

**OPINION AND ORDER DENYING, IN PART, MOTION TO DISMISS,
AND DENYING MOTION FOR RECONSIDERATION**

---

**THIS MATTER** comes before the Court pursuant to Defendants Chukchansi Gold

Casino and Resort ("the Casino") and Chukchansi Economic Development Authority's ("the

Authority") Motion to Dismiss **(# 19)**, the Plaintiffs' response **(# 44)**, and the Casino and the

Authority's reply **(# 52)**. By Order dated September 12, 2007 **(# 83)**, the Court reserved ruling

on this motion as it related to the Casino and the Authority, and on October 23, 2007, conducted

an evidentiary hearing **(# 103, 104)** to address certain factual disputes relevant to the

determination of the motion. Thereafter, the parties filed a stipulation **(# 105)** agreeing to

additional relevant facts.

Also pending before the Court are the Plaintiffs' Motion for Reconsideration **(# 99)** of

portions of the September 12, 2007 Order, to which no responsive papers have been filed; and

the Plaintiff's Motion to Strike **(# 107)** a letter **(# 106)** filed by the Authority purporting to set

forth facts that the Authority believes are undisputed but to which the Plaintiff refuses to agree, the Authority's response **(# 108)** to the Motion to Strike, and the Plaintiff's reply **(# 110)**.

## FACTS

The operative facts are set forth in some detail in the Court's September 12, 2007 Order, and to the extent relevant, are deemed incorporated herein. In summary, the Plaintiffs contend that the Casino, an gambling entity operated by the Chukchansi Indians ("the Tribe"); the Authority, the corporate entity through which the Tribe operates the casino; and Defendant Stanley, an individual officer of the Casino, unlawfully reproduced the Plaintiff's online educational programming and distributed it to the casino's staff without the Plaintiff's authorization and without compensation to the Plaintiff. The Plaintiff asserts a variety of claims sounding in federal copyright and trademark law, various common-law torts, breach of contract, and violation of the Colorado Consumer Protection Act, among others.

The Casino, the Authority, and the Tribe, which had been named as a defendant, filed a Motion to Dismiss **(# 19)**, asserting that all three entities were entitled to invoke the Tribe's sovereign immunity. The Plaintiff opposed the motion and requested leave to conduct discovery into the status of the Tribe's immunity. In its September 12, 2007 Order, the Court granted the motion with respect to the Tribe, rejecting the Plaintiff's argument that the Tribe had waived its sovereign immunity by agreed to a venue clause in the Plaintiff's End User License Agreement. Finding that there were disputed questions of fact that bore on whether the Casino and the Authority were entitled to share in the Tribe's immunity, the Court reserved ruling on their portion of the motion to dismiss, and conducted an evidentiary hearing with regard to those factual issues. Having considered the evidence adduced at that hearing, the parties' stipulation

as to additional facts,[1] and the parties' written and oral arguments, the Court is prepared to rule on the Motion to Dismiss as it relates to the Casino and the Authority.

Separately, the Plaintiff moves for reconsideration pursuant to Fed. R. Civ. P. 60(b) of that part of the Court's September 12, 2007 Order that granted the Tribe's Motion to Dismiss on sovereign immunity grounds. The Plaintiff states that the Gaming Compact between the Tribe and the State of California expressly requires the Tribe to waive its sovereign immunity for civil claims arising out of casino operations. The Plaintiff acknowledges that it has yet to obtain a copy of the actual Tribal ordinance that effectuates the promised waiver of sovereign immunity, and requests that the Court vacate that portion of the September 12, 2007 Order that found the Tribe entitled to sovereign immunity, and reserve ruling on that issue until the Plaintiff has had an opportunity to engage in additional discovery.

## ANALYSIS

### A.  Sovereign Immunity as to the Casino and the Authority

---

[1]On the same day that the parties filed a stipulation of additional facts, the Authority filed a Letter (# 106) with the Court, explaining that it believed that 53 additional facts were not disputed, but that the Plaintiff would not stipulate to those facts. The Authority attached a list of those 53 facts to the letter. The Plaintiff responded by moving to strike (# 107) the letter, arguing that the letter constituted a supplemental brief for which leave to file had not been sought or granted, and that it violated certain Local Rules of this Court, including D.C. Colo. L. Civ. R. 7.1(A) and 10.1.

The Court agrees, at least in principle, with the Plaintiff. Regardless of the reasons therefor, if the parties cannot stipulate to the existence of a fact, it is not a fact. Rather, it is a point of dispute that will require resolution by the Court. Thus, a listing of "facts" that are disputed is nothing more than a statement of one side's position – the functional equivalent of a brief. The Motion to Dismiss was already fully briefed, and neither party requested leave to file supplemental written briefing after the evidentiary hearing. Thus, the Court treats the Authority's letter as an unauthorized supplemental brief, and has disregarded it in its entirety. "Striking" of the brief, even if authorized under Fed. R. Civ. P. 12(f) (which, by its terms, applies only to "pleadings"), is unnecessary, as the Court has not considered the document. Accordingly, the Motion to Strike is denied as moot.

The Court reserved ruling on the Casino and the Authority's contention that they – despite being non-Indian entities – were nevertheless entitled to enjoy the Tribe's sovereign immunity. The Court found that question of whether a non-Indian entity could invoke an Indian tribe's sovereign immunity turned on the 10-factor analysis articulated in *Johnson v. Harrah's Kansas Casino Corp.*, 2006 WL 463138 (D. Kan. 2006) (unpublished). Those factors are: (i) the announced purpose for which the entity was formed; (ii) whether the entity was formed to manage or exploit specific tribal resources; (iii) whether federal policy protecting Indian assets is furthered by extending sovereign immunity to the entity; (iv) whether the entity is organized under the Tribe's laws or under federal law; (v) whether the entities purposes are similar to or serve tribal government; (vi) whether the entity's governance is drawn mainly from tribal officials; (viii) whether tribal officials exercise control over the organization; (ix) whether the Tribe has the power to dismiss members of the organization's governance; and (x) whether suit against the entity would impact the Tribe's fiscal resources. The court in *Johnson* treated the final factor – whether the Tribe will be financially liable for legal obligations incurred by the Casino and the Authority – as a threshold matter, reaching the remaining factors only if it were shown that a judgment against the entities would result in financial liability for the Tribe.

The Authority owns and operates the Casino. The Authority is governed by a board whose membership is identical to the council that governs the Tribe. The Tribal ordinance creating the Authority states that the Authority is exempt from all taxes in the same manner as the Tribe, but "for all other purposes . . . the Authority shall be considered a separate entity" from the Tribe. Mr. Graham, the Chairperson of both the Tribal Council and the Authority, explained that lenders were concerned that a default on loans would not be recoverable against

the Tribe. Thus, the Tribe created the Authority as a separate entity that would receive the loans and hold and manage the Casino property. The ordinance creating the Authority contains language protecting the Tribe from claims against the Authority, stating that "For the purpose of all liabilities and obligations incurred in the name of the Authority, the Authority shall constitute a separate entity, and no Tribal party shall be obligated therein." In other words, a judgment imposed against the Authority does not become a liability of the Tribe. Moreover, the ordinance states that "no Authority assets shall be considered owned by the Tribe, and no assets . . . of the Tribe . . . shall be considered those of the Authority."[2]

Thus, revenues derived from the operation of the Casino are deemed to be owned by the Authority, not the Tribe, and the Authority, not the Tribe, owns all of the assets of the Casino. By the terms of the Authority's articles of incorporation, "For the purpose of all liabilities and obligations incurred in the name of the Authority, the Authority shall constitute a separate entity, and no Tribal party shall be obligated therein." Thus, a judgment imposed against the Authority does not become a liability of the Tribe.

The revenues of the Casino flow to the Authority, which, in turn, supplies them to the Tribe. Thus, a successful claim against the Casino or the Authority would reduce the revenue that would be paid by the Authority to the Tribe. However, the evidence indicates that the Authority is obligated to pay over to the Tribe at least $1 million per month, regardless of its actual revenues. Thus, in months where Casino revenues dip or judgments are imposed against

_____

[2]In 2002, the Tribe modified the ordinance creating the Authority to delete language declaring the Authority "an instrumentality of the Tribe" and replace it with language stating that the Authority is "a wholly owned unincorporated enterprise of the Tribe."

the Casino, the Authority has run a deficit in order to make the required $1 million payment to the Tribe.

Having considered the evidence and the *Johnson* analysis, the Court finds that neither the Casino nor the Authority are entitled to invoke the Tribe's sovereign immunity. Indeed, the record indicates that a judgment against either of the entities will not result in direct financial liability for the Tribe or otherwise imperil the Tribe's assets. Mr. Graham essentially acknowledged that the Authority was created for the purpose of having an entity with assets reachable by creditors, because the creditors would be otherwise unwilling to lend money to the Tribe out of concern that the Tribe's claim of sovereign immunity would be used to defeat any claim arising out of the loans. Indeed, it is somewhat ironic that the Authority, having been formed to create a non-immune entity for creditors, now claims the right to invoke the Tribe's immunity.

In any event, it is evident to the Court that any judgment imposed against the Casino or the Authority will not reach to the Tribe's assets. The Defendants counsel acknowledged in closing argument that the only Tribal asset that would be endangered by a judgment against the Casino or the Authority would be the Tribe's right to receive the profits from the Casino. However, the asset itself – the right to receive profits – would not be threatened by a judgment against the Authority; only the amount of profits that would be available to turn over to the Tribe would be affected. The record reflects that the Tribe is entitled to receive at least $1 million per month from the Authority, regardless of the Casino's profits, but that should the actual profits fall short, the Authority will borrow or run a deficit to ensure that the Tribe receives that which it is entitled to. Thus, while a judgment against the Authority in this case may result in the Tribe

receiving less in profits than it had anticipated, the judgment would neither deprive the Tribe of

its asset – the right to receive profits – nor its guaranteed minimum payment. Accordingly, the

Court cannot find that a judgment against the Authority or the Casino would constitute a liability

against the Tribe, and thus, the Court need not reach the remaining *Johnson* factors.

Accordingly, the Court finds that the Casino and the Authority are not entitled to invoke

the Tribe's sovereign immunity, and their Motion to Dismiss on sovereign immunity grounds is

denied.

### B. Motion for Reconsideration

The Plaintiff seeks reconsideration of the Court's finding that the Tribe itself was entitled

to dismissal of all claims against it on the grounds of sovereign immunity. The Plaintiff now

points to the terms of the Gaming Compact, which appear to call for the Tribe to waive its

sovereign immunity with regard to claims arising from Casino operations.

Although the Federal Rules of Civil Procedure do not expressly contemplate a "motion

for reconsideration," Rules 59(e), 60(b), and the Court's inherent authority all permit the Court,

in appropriate circumstances, to revisit and revise its rulings if necessary, prior to the entry of

final judgment *Price v. Philpot*, 420 F.3d 1158, 1167 n. 9 (10th Cir. 2005). The timeliness of the

motion determines whether it is analyzed under Rule 59(e) – if filed within 10 days of the entry

of the judgment or order – or Rule 60(b) – if filed later than 10 days. *Id., citing Hawkins v.*

*Evans*, 64 F.3d 543, 546 (10th Cir. 1995). Here, the Defendants' motion was filed more than 10

days after the entry of the Order it seek reconsideration of, and thus, the Court analyzes the

motion under Fed. R. Civ. P. 60(b).

Rule 60(b) permits the Court to reconsider an order due to, among other things, a

substantive "mistake or law or fact" by the Court, Fed. R. Civ. P. 60(b)(1), *Yapp v. Excel Corp.*,

186 F.3d 1222, 1231 (10th Cir. 1999), "newly discovered evidence that, with reasonable

diligence, could not have been discovered [earlier]," Fed. R. Civ. P. 60(b)(2), or as a result of

"any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Nevertheless, reconsideration

under Rule 60(b) is extraordinary, and may only be granted in exceptional circumstances.

*Rogers v. Andrus Transp. Services*, 502 F.3d 1147, 1153 (10th Cir. 2007). Reconsideration is not

a tool to rehash previously-presented arguments already considered and rejected by the Court,

nor properly used to present new arguments based upon law or facts that existed at the time of

the original argument. *FDIC v. United Pacific Ins. Co.*, 152 F.3d 1266, 1272 (10th Cir.1998);

*Van Skiver v. United States*, 952 F.2d 1241, 1243-44 (10th Cir.1991).

Here, the Plaintiff has not identified which portion of Rule 60(b) it invokes in seeking

reconsideration, but the most likely candidate is Rule 60(b)(2), which permits a party to seek

reconsideration as a result of newly-discovered evidence. The Plaintiff's motion does not

indicate when the Plaintiff discovered the Gaming Compact, but one can reasonably assume that,

because it was not referenced in the Plaintiff's response to the Motion to Dismiss, it was not

discovered by the Plaintiff until later. Nevertheless, the fact that evidence was recently

discovered by a party does not automatically render it "newly discovered evidence." Under the

terms of Rule 60(b) itself, "newly discovered evidence" is that which "with reasonable diligence,

could not have been discovered" within 10 days of the date of the Court's Order – that is, within

10 days of September 12, 2007. Moreover, courts recognize that a motion for reconsideration is

not a means to present arguments based on facts that were in existence at the time of initial

briefing. *Van Skiver*, 952 F.2d at 1243-44.

Here, the Gaming Compact cited by the Plaintiff is dated September 10, 1999. Certainly,

the Compact itself was in existence when the Motion to Dismiss was being briefed in 2007. The

Plaintiff has previously described difficulties in obtaining copies of tribal laws and records from

the Tribe itself, but nothing indicates that the Gaming Compact could not have been

expeditiously obtained from the other party to its terms, the State of California. Thus, in the

absence of some indication that the Gaming Compact could not have been discovered by the

Plaintiff in time to include it in the Plaintiff's response to the Motion to Dismiss, the Court does

not consider it to be "newly discovered evidence" warranting reconsideration under Rule 60(b).

Nor is the Court inclined to grant reconsideration of its sovereign immunity finding at

this time based on the terms of the Compact. Admittedly, the Compact does appear to require

the Tribe to execute a waiver of sovereign immunity for claims arising from "injuries to person

or property . . . in connection with the Tribe's Gaming Operations." Arguably, the claims in this

case might fall within those terms, calling into doubt whether the Tribe is, in fact, entitled to

sovereign immunity. But the Gaming Compact itself cannot be construed to be a waiver of the

Tribe's sovereign immunity, only a promise by the Tribe to execute such a waiver as part of the

adoption of a "tort liability ordinance." Without that ordinance itself, the Court cannot

determine whether the Tribe did indeed waive sovereign immunity in the manner required by the

Compact. If it did, the Plaintiff may be within its rights to seek reconsideration of the dismissal

of the Tribe on sovereign immunity grounds.[3]  If it did not, the Tribe may be in breach of the

Compact as against the State of California, but it is by no means clear that this breach would

permit the Court to impose the terms of the Compact's intended waiver against the Tribe.  In

either event, reconsideration is inappropriate here until the actual tort ordinance (or an

explanation for its absence) is secured.

Accordingly, the Plaintiff's Motion for Reconsideration is denied.

## CONCLUSION

For the foregoing reasons, to the extent it seeks dismissal of the Casino and the Authority

on sovereign immunity grounds, the Defendants' Motion to Dismiss **(# 19)** is **DENIED IN**

---

[3]Admittedly, reconsideration under these circumstances would again be most appropriate under Rule 60(b)(2), in that discovery of the tort ordinance and immunity waiver may constitute newly-discovered evidence that was not available earlier to the Plaintiff because the Tribe refused to supply it.  It is also conceivable that the Tribe's assertion in the Motion to Dismiss that it had not waived sovereign immunity in the Motion to Dismiss could be characterized as fraud or misrepresentation warranting reconsideration under Rule 60(b)(3) (and perhaps sanctions under Fed. R. Civ. P. 11).  In either instance, however, reconsideration is only permitted within one year of the September 12, 2007 Order,   Fed. R. Civ. P. 60(c)(1), a time period soon to expire.

Even assuming that reconsideration under Rule 60(b)(2) and (3) were not available when the tort ordinance is finally obtained, the Court is confident that, in appropriate circumstances, reconsideration could be available under Rule 60(b)(6), or through invocation of the Court's inherent authority.

**PART**.  The Court's September 12, 2007 ruling with regard to the remaining portions of that

motion remain effective.  The Plaintiff's Motion for Reconsideration **(# 99)** is **DENIED**.  The

Plaintiff's Motion to Strike **(# 107)** is **DENIED AS MOOT**.

 Dated this 5th day of August, 2008

 **BY THE COURT:**

 Marcia S. Krieger
 United States District Judge